**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Artie Ray DUFUR, aka Artie Ray
Baker, Defendant-Appellant.**

**No. 79–1723.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 12, 1980.

Decided Sept. 17, 1980.

John W. Lundin, Seattle, Wash., for defendant-appellant.

J. Ronald Sim, Asst. U. S. Atty., Seattle, Wash., for plaintiff-appellee.

Before TRASK, GOODWIN and FARRIS, Circuit Judges.

FARRIS, Circuit Judge:

Artie Ray Dufur, aka Artie Ray Baker, appeals his conviction, under 18 U.S.C. § 1111, for first degree murder of a customs officer. We affirm.

*FACTS*

Dufur entered the United States by automobile at a customs check point on the Canadian border near Lynden, Washington. He was sent to the customshouse for a secondary inspection where he shot and killed Customs Inspector Gerry Ward. Dufur fled by automobile and then on foot, being apprehended after a night-long search.

Dufur was transported to Whatcom County jail in a mobile booking van. While en route, he was advised of his *Miranda* rights. Dufur explained to the interrogating agents that he had killed Ward because he feared being apprehended and returned to prison from which he had escaped while serving a sentence for a prior murder conviction.

*DISCUSSION*

Dufur contends that the district court committed reversible error by (1) failing to adequately protect against the prejudicial effects of publicity both during and prior to trial; (2) admitting into evidence certain allegedly involuntary admissions; (3) failing to dismiss the indictment's murder count for lack of specificity; (4) declining to appoint a second defense attorney; and (5) denying his motion for a mistrial because of certain comments made by the prosecutor during closing argument.

1. *Publicity*

The district court denied Dufur's motions for a change of venue, dismissal or seques-

tration of the jury, exclusion of the press from pretrial proceedings, and interviews with the jurors after rendition of the verdict. Dufur argues that the "cumulative effect" of these actions denied him a fair trial. We disagree.

Dufur argues that certain jurors, because of exposure to pretrial publicity, remembered "a number of significant details regarding the defendant and the circumstances of the crime." He has not specified, however, any prejudicial information known by any juror. Where publicity about a case is massive, a presumption of prejudice arises. *Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). The publicity here did not warrant such a presumption.

The district court conducted extensive *voir dire* before impaneling the jury, interviewing individually in chambers any prospective juror who had been exposed to pretrial publicity. Once the jury was impaneled, the court admonished it repeatedly to avoid exposure to publicity about the case. Whether to sequester a jury or how often to inquire about its exposure to publicity are questions committed to the district court's discretion. *Frame v. United States,* 444 F.2d 71, 72 (9th Cir.), *cert. denied,* 404 U.S. 942, 92 S.Ct. 291, 30 L.Ed.2d 256 (1971).

Dufur has not shown that the district court abused its discretion in denying any of his motions or that the "cumulative effect" of the district court's denials precluded him from obtaining a fair trial.

2. *Post-Apprehension Admissions*

Dufur maintains that he did not knowingly waive his right to remain silent and to have an attorney present. He also contends that the circumstances surrounding his apprehension and arrest were so coercive that any statements he made at the time were involuntary regardless of whether he was properly given his *Miranda* warnings. A court must consider the totality of the circumstances in assessing the voluntariness of a statement. *Schneckloth*

v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The district court heard conflicting evidence on the issues of waiver and voluntariness and found that Dufur had been properly advised of his rights, understood and waived them, and made a voluntary confession. These findings, which depend on the district court's assessment of the credibility of the witnesses, are supported by the record. They are not "clearly erroneous." *United States v. Parker*, 549 F.2d 1217, 1220–21 (9th Cir.), *cert. denied*, 430 U.S. 971, 97 S.Ct. 1659, 52 L.Ed.2d 365 (1977).

### 3. Specificity of the Murder Count

■ In *Ball v. United States*, 140 U.S. 118, 11 S.Ct. 761, 35 L.Ed. 377 (1891), the Court reversed a murder conviction because the indictment failed to allege the place of death with sufficient specificity. The requirement is that "[a]ll the essential ingredients of the offence charged must be stated in the indictment, embracing with reasonable certainty the particulars of time and place." *Id.* at 136, 11 S.Ct. at 767.

The murder count states: "That on or about May 24, 1979, at Lynden, within the Western District of Washington, ARTIE RAY BAKER a/k/a MICHAEL JOSEPH ARRINGTON with premeditation and by means of shooting, murdered Kenneth Ward . . . ." This form of indictment, Form 1 from the Federal Rules of Criminal Procedure, states the time and place of death with sufficient certainty to satisfy the requirement of *Ball*.[1]

---

1. We have substantial doubts whether *Ball* still requires an averment of the place of death. After the Supreme Court decided *Ball*, Congress changed the common law rule to vest jurisdiction over a murder conviction in the district where the injury was inflicted rather than where the death occurred. 18 U.S.C. § 3236. Since the place of death no longer determines jurisdiction, it may no longer be an "essential ingredient of the offense" whose averment is required by *Ball*. We need not determine the continuing vitality of that requirement here, because the indictment is sufficiently specific even if such an averment is still required.

2. *United States v. Kaiser*, 545 F.2d 467 (5th Cir. 1977) (holding that *Furman* invalidated the death penalty provision of 18 U.S.C. § 1111).

### 4. Entitlement to Two Court-Appointed Attorneys

■ Under 18 U.S.C. § 3005, any person indicted for a "capital crime" is entitled to two attorneys. The district court declined to appoint a second attorney, concluding that since the death penalty provision of 18 U.S.C. § 1111 was rendered unconstitutional by *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972),[2] first degree murder under section 1111 did not constitute a "capital crime."

We have not previously decided whether *Furman's* invalidation of the death penalty provision of 18 U.S.C. § 1111 also invalidates the right to two attorneys in prosecutions for "capital crimes."[3] Other circuits have decided this issue. *United States v. Shepherd*, 576 F.2d 719 (7th Cir.), *cert. denied*, 439 U.S. 852, 99 S.Ct. 158, 58 L.Ed.2d 155 (1978) (holding that defendant was not entitled to two attorneys when prosecuted under a statute whose death penalty was invalidated by *Furman*); *United States v. Weddell*, 567 F.2d 767 (8th Cir. 1977) (reaching the same conclusion as the Seventh Circuit); *United States v. Watson*, 496 F.2d 1125 (4th Cir. 1973) (holding that defendant was entitled to two attorneys despite invalidity of death penalty).

We recently approved the method of inquiry employed by the Fourth Circuit in *United States v. Watson, supra*, but we expressly declined to decide whether we

---

3. In *United States v. Martinez*, 536 F.2d 886 (9th Cir. 1976), we held that a defendant prosecuted under 18 U.S.C. § 1111 was not entitled to twenty peremptory jury challenges under Rule 24(b) of the Federal Rules of Criminal Procedure which grants that procedural protection in capital cases. We stated in *Martinez*, however, that "[t]he granting by the District Court of the request for two attorneys pursuant to 18 U.S.C. § 3005 under the rationale of *United States v. Watson*, 496 F.2d 1125 (4th Cir. 1973), is not inconsistent with the denial of the request for 20 peremptory jury challenges under Rule 24(b)." *Id.* at 890.

accepted the *Watson* court's conclusion. *United States v. Kennedy*, 618 F.2d 557 (9th Cir. 1980). "[Furman] did not necessarily have the effect of invalidating all statutes that were tied to the concept of a 'capital' case. If the statute's purpose derives from the nature of the offense with which the defendant is charged and not from the potential severity of the punishment, it remains in effect." *Id.* at 558.

We agree with the Seventh Circuit that the purpose of the two-attorney right is "to reduce the chance that an innocent defendant would be put to death because of inadvertence or errors in judgment of his counsel." *United States v. Shepherd, supra* at 729. Since the statute's purpose, in our opinion, derives from the severity of the punishment rather than the nature of the offense, the elimination of the death penalty eliminates Dufur's right under 18 U.S.C. § 3005 to a second court-appointed attorney.

5. *The Prosecutor's Remarks During Closing Argument*

■ Dufur contends that the prosecutor commented indirectly on his failure to testify in his own behalf by referring to the fact that the defense psychiatrist relied on information given him by persons who were not subject to cross-examination. The prosecutor, by use of the language "whether it's the patient or anybody else," made clear that Dufur also gave the psychiatrist un-cross-examined information. Those comments could reasonably be interpreted as an indirect reference to Dufur's failure to testify. Read as a whole, however, the closing argument focuses on the untested nature of the entire mass of material upon which the defense psychiatrist relied rather than solely on the information Dufur supplied. Although the comments were only marginally permissible, they were "not of such character that the jury would naturally and necessarily take them to be comments on the failure of the accused to testify." *United States v. Cornfeld*, 563 F.2d 967, 971 (9th Cir. 1977).

Dufur also argues that the district court should have granted his mistrial motion be-cause the prosecutor impermissibly commented on the evidence during closing argument. The defense failed to raise any objection during closing argument, but instead moved for a mistrial after a curative instruction was no longer timely. Nothing in the closing argument warranted declaration of a mistrial.

Affirmed.