UNITED STATES of America,
Plaintiff-Appellee,

v.

Scott David STEEL,
Defendant-Appellant.

No. 84–3104.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 2, 1985.

Decided April 30, 1985.

Robert L. Zimmerman, Asst. U.S. Atty., Billings, Mont., for plaintiff-appellee.

Michael J. Sherwood, Missoula, Mont., for defendant-appellant.

Before WRIGHT, KENNEDY, and ANDERSON, Circuit Judges.

J. BLAINE ANDERSON, Circuit Judge:

Appellant Scott David Steel was convicted by a federal jury on counts of first-degree murder, theft of a motor vehicle, and interstate transportation of a stolen motor vehicle. In asking for a new trial, appellant raises numerous allegations of error. We reject each of appellant's allegations and affirm the conviction on all three counts.

I. BACKGROUND

On July 12, 1983, appellant was hitchhiking in Montana. At the same time, Fredrick Pongrace was driving west toward Seattle, Washington in his 1968 Volkswagen Van. Pongrace picked up appellant and the two traveled together the rest of the day, stopping for the night at a campground near Cut Bank, Montana. At dawn the next morning, July 13, an altercation arose between the owner of the campground, one Bomar, and the two travelers. At trial, Bomar testified that he confronted appellant with a shotgun because appellant's dog, which was traveling with appellant, had been running loose and frightening other campers. Bomar testified that appellant responded by drawing a knife, as if to attack Bomar. Consequently, Bomar testified, he expelled the travelers from the campground.

Appellant and Pongrace drove directly from the campground to Browning, Montana, where they called the Cut Bank sheriff to complain about Bomar. Subsequently, the two drove into Glacier National Park, where sometime during the day they separated. Appellant was seen at a bar in Glacier National Park for several hours in the afternoon. Pongrace's precise whereabouts during this time are unknown, al-

though it is known that during this time Pongrace placed a second call to the Cut Bank sheriff from an undisclosed location.

Several hours later, at approximately 2:00 a.m. on July 14, a wrecker was summoned to pull a Volkswagen Van out of a ditch near Ronan, Montana, approximately 70 miles south of Glacier National Park. The lone occupants of the van were appellant and his dog. The van was Pongrace's. Appellant stated that he had no money and paid the wrecker by giving him Pongrace's camera.

At 9:00 a.m. on the 14th, a pair of trousers were found discarded along the highway near Hamilton, Montana, approximately 170 miles south of Glacier National Park. In the trousers was a wallet with appellant's fingerprints. In addition, the trousers were stained with blood, consistent in type with both the appellant and Pongrace.

At 10:25 a.m. on the 14th, Pongrace's body was found at the base of a cliff in Glacier National Park. An autopsy was performed and the cause of Pongrace's death was determined to be due to injuries sustained in the fall down the cliff.

Meanwhile, appellant continued traveling south, eventually arriving at his sister's home in Los Angeles on July 15. Within days, appellant abandoned Pongrace's van in downtown Los Angeles and left town by hitchhiking. Ten months later, on May 29, 1984, appellant surrendered himself to the police in St. George, Utah.

On June 5, 1984, the Montana State Medical Examiner concluded, after studying photographs of Pongrace's body, that certain wounds on the body were stab wounds, rather than wounds sustained in the fall down the cliff. The Medical Examiner further opined that Pongrace had died before his body fell down the cliff, premised upon the lack of blood flow from punctures caused by the fall. Appellant was subsequently tried and convicted of first-degree murder in the death of Fredrick Pongrace, theft of Pongrace's van, and interstate transportation of Pongrace's stolen van.

## II. DISCUSSION

### A. *Government Witness List*

Under 18 U.S.C. § 3432, any person indicted for a "capital crime" must be provided with a prosecution witness list before trial. The district court denied a motion to require the government to furnish such a list, presumably because the death penalty provision of 18 U.S.C. § 1111 was rendered unconstitutional by *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), and *United States v. Kaiser,* 545 F.2d 467 (5th Cir.1977); thereby eliminating first-degree murder as a "capital crime." Appellant challenges this ruling by the district court, arguing that the witness list provision should survive *Furman.*

We have not previously decided whether the invalidation of the death penalty also invalidates the right to a witness list in prosecutions for capital crimes. Generally, the law in this circuit is that a witness list need not be provided in non-capital cases. *United States v. Sukumolachan,* 610 F.2d 685, 688 (9th Cir.1980); *United States v. Angelini,* 607 F.2d 1305, 1308 (9th Cir.1979). The Fifth Circuit has held that murder under 18 U.S.C. § 1111 is no longer "capital" and, therefore, a witness list is not required. *Kaiser,* 545 F.2d at 475. This court has said, however, that "[*Furman*] did not necessarily have the effect of invalidating all statutes that were tied to the concept of a 'capital' case. If the statute's purpose derives from the nature of the offense with which the defendant is charged and not from the potential severity of the punishment, it remains in effect." *United States v. Kennedy,* 618 F.2d 557, 558 (9th Cir.1980).

Appellant argues that § 3432 is premised upon the nature of the offense in that a witness list is designed to compensate for the revulsion which a murder charge generates in the trier of fact as well as the inherent complexity of these types of cases. We are not persuaded by this logic. In our view, the purpose of the witness list right is to reduce the chance that an innocent defendant would be put to death by providing a pretrial safeguard not

available in noncapital criminal prosecutions. Therefore, since the statute's purpose derives from the severity of the punishment rather than from the nature of the offense, we hold that the elimination of the death penalty also eliminated the appellant's right under 18 U.S.C. § 3432 to a prosecution witness list.

### B. *Additional Counsel*

■ Appellant moved prior to trial for the appointment of a second defense attorney. The district court denied the motion, relying on *United States v. Dufur*, 648 F.2d 512 (9th Cir.1980), *cert. denied*, 450 U.S. 925, 101 S.Ct. 1378, 67 L.Ed.2d 355 (1981). In *Dufur*, this court held that 18 U.S.C. § 3005, which gave persons indicted for capital crimes a right to two attorneys, was eliminated along with the elimination of the death penalty. *Dufur* did not say that the court could not, in its discretion, appoint more than one attorney. Such a decision, therefore, is left to the sound discretion of the district court, taking into consideration the circumstances of each case. We decline to reconsider the reasoning of *Dufur*, as appellant requests, and reaffirm the holding in that case.

■ In its order denying the motion at bar, the district court appeared to read *Dufur* as denying the authority to appoint additional counsel. Inasmuch as we hold that such a decision is indeed discretionary, however, we hold also that the district court did not abuse its discretion in denying a second counsel in this case. Appellant was represented by able and competent counsel, and all possible defenses were thoroughly presented.[1] We can see no abuse of discretion in denying additional counsel under the circumstances of the case. On this record the denial was harmless.

### C. *Accidental Viewing of the Appellant*

On the day set for the beginning of trial, the appellant was being moved into the courthouse by a federal marshal. Appellant was secured in handcuffs and belly chains. Quite by accident, fifteen to twenty of the prospective jurors passed within four feet of appellant in the hallway. An unidentified panel member remarked something to the effect of "that must be the criminal." Appellant immediately made a motion to disqualify the jury panel, which the district court denied.

■ The district court carefully questioned the marshal and determined that the meeting had been brief, that few of the potential jurors had appeared to actually see appellant, and, therefore, that the potential jurors had not been tainted. Subsequently the district court conducted a careful and thorough voir dire, due to publicity surrounding the trial, to ensure that each juror selected would be fair and impartial. Under these circumstances, the fact that some of the potential jurors may have seen appellant in the custody of the marshal was not so inherently prejudicial as to require that the entire jury panel be disqualified. *See United States v. Figueroa-Espinoza*, 454 F.2d 590, 591 (9th Cir.1972). We hold that the district court did not abuse its discretion in denying this motion.

### D. *Jury Instructions*

■ Appellant raises three allegations of error with respect to the jury instructions issued by the district court. At the outset, we note that the district court has broad discretion in formulating the instructions, and neither party may demand specific language. The district court must, however, instruct on any legitimate theory of defense that is supported by the evidence. On review, this court must consider the instructions as a whole in determining

---

1. We commend both counsel in this case for their high level of professionalism and their obvious candor and frankness with each other, with the district court, and this court in their briefing and during the oral presentation. The record reveals that defendant was fairly tried and was ably and effectively represented by his counsel. See, I A.B.A. Standards of Criminal Justice, Second Edition, Chapters 3 and 4 (1980).

whether the district court abused its discretion. *United States v. Wellington,* 754 F.2d 1457, 1462 (9th Cir.1985).

In its instructions, the district court stated:

> The punishment provided by law ... is a matter exclusively within the province of the court and should never be considered by the jury at arriving at an impartial verdict in arriving at the guilt or innocence of the accused. *Although I will advise you that the death penalty will not be invoked in this case.* It is proper to add the caution that nothing said in these instructions or in the form of verdict prepared for your convenience suggests or conveys in any manner, any intimations as to what verdict I think you should find. The verdict is the sole and exclusive duty and responsibility of the jury.

[RT at 514 (emphasis added)].

■ Appellant argues that reference to the death penalty could only serve to ease the decision of the jury, thereby invading the province of the jury. We do not agree. The court's instruction, when read as a whole, unquestionably instructed the jury as to its duty and province. The jury can be presumed to have followed those instructions. Although the disputed sentence may have been unnecessary, the realistic chance that it had any undue effect on the jury verdict is very remote. We find that the district court did not abuse its discretion by including this language.

■ Appellant also argues that the district court abused its discretion by refusing two of his requested instructions. First, the court refused to instruct on the definition of "to deprive," in connection with the theft charge. Instead, the court instructed on the definition of "to steal." We have reviewed both the requested and given instructions and conclude that the district court did not abuse its discretion in refusing appellant's request. The elements of the offense were adequately covered in the given instruction.

■ Second, the court refused to instruct on the lesser included offense of manslaughter. The trial court is in a better position to determine whether there is sufficient evidence to give a lesser included offense instruction. *United States v. Crouthers,* 669 F.2d 635, 640 (10th Cir. 1982). That determination will not be disturbed on appeal without an abuse of discretion. *Id.* We cannot agree that manslaughter was a legitimate theory of defense under the evidence introduced at trial. The mere fact that blood found on the discarded trousers is consistent in type with that of appellant's blood is not enough of a foundation to infer that a quarrel took place between appellant and Pongrace. Therefore, a manslaughter instruction was correctly refused by the district court.

### E. *Voir Dire*

■ Appellant contends that the district court abused its discretion in conducting voir dire by not asking certain proposed questions of the jury which were designed to explore the juror's attitudes toward nonconformists. In conducting voir dire, the district court has wide latitude and failure to ask specific questions will be reversed only for an abuse of discretion. *United States v. Jones,* 722 F.2d 528, 529 (9th Cir.1983). An abuse of discretion will be found if the voir dire is not reasonably sufficient to test the jury for bias or partiality, and the court may properly refuse questions which are only speculatively tied to prejudice. *Id.*

■ We have no difficulty in finding that the district court properly exercised its discretion in conducting voir dire in this case. The court carefully and comprehensively questioned the panel, and determined that each member would be fair, impartial and would follow the court's instructions. The Constitution requires no more. In light of the voir dire as a whole, refusal of appellant's proposed questions was proper.

### F. *Questions from the Jury*

■ During deliberations, the jury sent a note to the court asking if any statement

by the defendant at the time of arrest was admitted into evidence. The court answered by saying "[i]f your ... question refers to a written statement by defendant, the answer is no." Appellant alleges that this answer may be viewed as an impermissible comment on appellant's exercise of his *Miranda* rights. In our view, however, the court gave a short, simple and correct answer to a direct question. The evidence did show that at the time of his arrest, appellant telephoned the police and asked if there was an outstanding warrant for his arrest. Therefore, the court's answer that no written statement was entered into evidence was factually correct. Further, the answer did not approach impermissibility, and appellant can only argue otherwise by reading too much into the question and answer.

### G. *Prior Crimes and Bad Acts*

At trial, the government introduced evidence of two prior acts of appellant. First, the government proved that appellant had stolen a wallet on July 12, which was found in the discarded trousers on July 14. Second, the government sought to show that appellant threatened Bomar with a knife on July 13. Evidence of both acts was admitted only for limited purposes: the wallet evidence to prove identity, because it conclusively placed appellant at certain locations before and after the crime; the alleged knife incident to prove that appellant was in possession of a knife.

■ We review the district court's decision on this evidentiary matter for an abuse of discretion. *Wellington,* 754 F.2d at 1465. The record shows that the court undertook a careful and considered balancing of the probative value versus the prejudicial effect before admitting the evidence. In these situations, it is well accepted that Fed.R.Evid. 404(b) allows this type of evidence to be admitted when relevant to an issue other than criminal propensity. *See United States v. Mehrmanesh,* 689 F.2d 822, 830 (9th Cir.1982). The record also shows that the court carefully instructed the jury as to the limited purposes

of the evidence, both during the trial and at the close of the evidence. We find no abuse of discretion.

### H. *Hearsay*

■ The brother-in-law of the victim testified at trial concerning ownership of the Volkswagen Van driven by the victim, and later stolen by appellant. That testimony established that the van was jointly owned by the victim and his sister, the witness's wife. Appellant alleges that this testimony was hearsay. This is a close, if relatively insignificant, question. We do not think the testimony was hearsay because the witness had personal knowledge of the van ownership and, therefore, no out-of-court statement was made. In any event, appellant's objection to this testimony at trial was not specific enough to allow a hearsay argument on appeal. F.R.E. 103(a)(1).

### I. *Rebuttal Evidence*

■ On rebuttal, the government introduced into evidence a folding knife that appellant possessed at the time of his arrest, for the purpose of showing that it was appellant's habit to carry a knife. Appellant alleges that this was improper because it was not introduced to deny or negate any "affirmative fact" which appellant attempted to prove. We disagree. The government's theory of the murder was that appellant stabbed Pongrace. The only evidence in the government's case-in-chief which placed a knife in appellant's hands came from the testimony of Bomar. When appellant put on his defense, Bomar was impeached by a witness who did not see a knife. Thus, the evidence was proper to rebut the inference that appellant did not have a knife. It does not matter, contrary to appellant's argument, that that inference came from appellant's own rebuttal of the government's case-in-chief. The district court did not abuse its broad discretion in admitting this evidence. *United States v. McCollum,* 732 F.2d 1419, 1426 (9th Cir.1984).

## J. Sufficiency of the Evidence

Appellant alleges that the evidence is insufficient to support a guilty verdict on the charge of first-degree murder. Appellant's argument is based on the fact that there is no direct evidence placing appellant and Pongrace together at the time the death had to have occurred. In considering this issue, we must view the evidence in the light most favorable to the government and decide if any rational jury could find appellant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Wellington*, 754 F.2d at 1466.

■■■ The evidence against appellant, although completely circumstantial, was overwhelming. When viewed under the standard set forth above, we have no trouble in affirming the conviction. The evidence showed that appellant had the opportunity and the means to commit the murder. The evidence also showed that appellant made off with all of Pongrace's possessions at approximately the same time the death had to have occurred. The jury verdict will be upheld.

## K. New Trial

Shortly after the trial ended, the government learned that its witness Bomar had perjured himself regarding the alleged knife-wielding incident in the campground. Bomar had previously told an FBI agent that appellant had not drawn his knife; however, that agent was unavailable at trial and so was unable to catch the falsehood until after appellant was convicted. The government immediately notified defense counsel and the court upon learning of the problem. Appellant moved for a new trial. The district court denied the motion, reasoning that, in light of all the evidence, the jury's assessment of Bomar's testimony would not have been affected by further impeachment based upon the new information. Appellant challenges this ruling, and renews his plea for a new trial based on three grounds: (1) newly discovered evidence; (2) perjury on behalf of a prosecution witness; and (3) suppression of exculpatory evidence by the prosecution.

■■■ When based upon the proper legal standard, a decision to grant or deny a new trial is within the sound discretion of the district court. *United States v. Krasny*, 607 F.2d 840, 845 (9th Cir.1979), *cert. denied*, 445 U.S. 942, 100 S.Ct. 1337, 63 L.Ed.2d 775 (1980), and the appellant carries a significant burden to show that the district court abused its discretion. *United States v. Brashier*, 548 F.2d 1315, 1327 (9th Cir.1976), *cert. denied*, 429 U.S. 1111, 97 S.Ct. 1149, 51 L.Ed.2d 565 (1977).

■■■ In general, to obtain a new trial based on either of appellant's first two grounds, the appellant must meet the following requirements:

(1) It must appear from the motion that the evidence relied on is, in fact, newly discovered, i.e., discovered after trial; (2) the motion must allege facts from which the court may infer diligence on the part of the movant; (3) the evidence relied on must not be merely cumulative or impeaching; (4) must be material to the issues involved; and (5) must be such as, on a new trial, would *probably* produce an acquittal.

*Krasny*, 607 F.2d at 842–843 (emphasis in original); *see also United States v. Herbert*, 698 F.2d 981, 985 (9th Cir.), *cert. denied*, — U.S. —, 104 S.Ct. 87, 78 L.Ed.2d 95 (1983); *United States v. Kenny*, 645 F.2d 1323, 1343 (9th Cir.), *cert. denied*, 452 U.S. 920, 101 S.Ct. 3059, 69 L.Ed.2d 425 (1981). This five-prong test is difficult to meet. Appellant fails most obviously in that the new evidence would not probably produce an acquittal. The chance of acquittal would be speculative, at best. Although this probability rule is a stringent one, it was adopted by this court after a careful consideration of the inherent uncertainty in trying to assess the weight any newly discovered evidence would have on a jury's deliberations. *See Krasny*, 607 F.2d at 843–844. We adhere to the probability rule.

Appellant's third ground for a new trial, negligent nondisclosure of exculpatory evi-

**714**

dence, is considered under a somewhat less stringent test. In *United States v. Butler,* this court held:

> The proper standard in negligent nondisclosure cases should call for a new trial wherever the nondisclosed evidence might reasonably have affected the jury's judgment on some material point, without necessarily requiring a supplemental finding that it also would have changed its verdict.

567 F.2d 885, 890 (9th Cir.1978).

The issue arises because the FBI agent, after a pre-trial interview with Bomar, failed to include in his report the fact that Bomar said appellant had not drawn his knife. When Bomar later began averring that appellant tried to attack him with the knife, the earlier statement became exculpatory. Because the government was required to furnish all exculpatory evidence under the doctrine of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and because investigative officers are part of the prosecution, *Butler,* 567 F.2d at 891, there was indeed a negligent nondisclosure.

■ The district court recognized the proper test, and held that the information would merely have afforded a different way to impeach Bomar. Consequently, the court decided, based on all the evidence, that the jury would not have been affected in assessing Bomar's credibility. It is important to note that appellant vigorously impeached Bomar, both through cross-examination and through use of another witness. Further, appellant introduced the report of the FBI agent, with its conspicuous absence of any mention of a knife. Based on all these facts, and the reality that the district court is in a far better position than are we to judge credibility, we simply cannot conclude that the district court abused its discretion in not granting a new trial.

Accordingly, for the reasons set forth herein, the appellant's conviction on all three counts is

AFFIRMED.