**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Michael WAGGONER, Defendant–Appellant.**

**No. 00–10252.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 10, 2003.

Filed Aug. 5, 2003.

---

Francisco Leon, Tucson, Arizona, for the defendant-appellant.

Paul K. Charlton, Robert K. Miskell, Christina M. Cabanillas, and Sean C. Chapman, United States Attorneys Office, District of Arizona, Tucson, Arizona, for the plaintiff-appellee.

Before BEEZER, THOMAS, and CLIFTON, Circuit Judges.

THOMAS, Circuit Judge.

This appeal presents the question of whether 18 U.S.C. § 3005 requires that two attorneys be appointed whenever the government indicts a defendant for a crime punishable by death, even if the death penalty is not sought. We conclude that it does not, and we affirm the judgment of the district court.

I

This case arises out of the murder of Alzinnia Keyes, a confidential informant for the Drug Enforcement Administration ("DEA"). In January 1998, Terile Williams sold Keyes approximately two ounces of crack cocaine. At the time, Williams was the target of sustained DEA investigation for cocaine trafficking in Tucson, Arizona. After the transaction, law enforcement officers arrested Williams, charging him with felonious distribution of cocaine. Keyes was to serve as a key witness against Williams at trial.

Williams, Freddie Taylor, and Michael Waggoner were longtime friends. As Williams awaited trial, Waggoner told Williams' sister, Delisia Wilkes, that Williams need not "worry"; Waggoner stated that he was "going to get the bitch." On March 12, 1998, Taylor and Waggoner located Keyes in a Tucson neighborhood, shot her numerous times, and sped away. Keyes died several days later in intensive care, having sustained fatal wounds from the gunshots.

On March 3, 1999, a federal grand jury indicted Waggoner and Taylor for the murder of a confidential federal informant. Six weeks later, a federal grand jury issued a superseding indictment, charging Waggoner and Taylor with conspiracy to commit the murder of Keyes while she was serving as a federal informant in a federal investigation, see 18 U.S.C. §§ 1111, 1114, 1117 (1998); with murder, see 18 U.S.C. §§ 2, 1111, 1114 (1998); and with witness tampering in a federal case. See 18 U.S.C. § 1512 (1998). Taylor, who was indicted on a pair of additional counts as well, was tried separately.[1]

Before trial, Richard Lougee was appointed to represent Waggoner. In late March 1999, Waggoner requested the appointment of second counsel under 18 U.S.C. § 3005 during the presentation of

---

1. Taylor's appeal was resolved in a separate opinion and memorandum disposition. *See United States v. Taylor,* 322 F.3d 1209 (9th Cir.2003); *United States v. Taylor,* 59 Fed. Appx. 960, 2003 WL 1459140 (9th Cir.2003).

Waggoner's case to the Department of Justice for consideration of whether the death penalty would be sought against Waggoner. The district court granted Waggoner's request expressly "on an interim basis," conditioning Waggoner's access to second counsel on the prosecution's determination of whether or not to seek the death penalty. On September 1, 1999, the district court appointed Natman Schaye as Waggoner's second counsel.

The government subsequently announced that it would not pursue the death penalty against Waggoner. As a result, on November 30, 1999, the district court vacated its order appointing Schaye as second counsel. Two weeks later, the district court construed Waggoner's "Objection to Discharge of Second Counsel" as a motion to appoint second counsel under 18 U.S.C. § 3005 and denied the motion. In the proceedings that immediately followed this denial, the district court permitted Schaye to remain at the defense-counsel table but refused to permit Schaye to argue motions before the court. At this point and throughout the following trial, the district court recognized Lougee as Waggoner's sole advocate.

On February 17, 2000, a federal jury convicted Waggoner of murder, conspiracy to commit murder, and tampering with a witness in a federal case. The district court sentenced Waggoner to a term of life in prison and 60 months supervised release; Waggoner was also ordered to pay a $10,000 fine and a $100 mandatory special assessment. The district court subsequently denied Waggoner's motion for a new trial based on newly discovered evidence. This timely appeal followed.

## II

The right to appointment of two attorneys in federal capital cases is a well established one. Congress first created such a right in 1790, see 1 Stat. 118–119, and, in 1948, Congress codified this two-attorney requirement in 18 U.S.C. § 3005. *See* Act of June 25, 1948, c. 645, Pub. L. 772, 62 Stat. 814. In 1994, Congress amended the 1948 version of § 3005 contemporaneously with the passage of the Federal Death Penalty Act of 1994, 18 U.S.C. §§ 3591–3598 (1994), Pub. L. No. 103–322, Title VI, § 60026, 108 Stat. 1982. In pertinent part, § 3005 reads:

> Whoever is indicted for treason or other capital crime shall be allowed to make his full defense by counsel; and the court before which the defendant is to be tried, or a judge thereof, shall promptly, upon the defendant's request assign 2 such counsel, of whom at least 1 shall be learned in the law applicable to capital cases....

18 U.S.C. § 3005 (2000).

On its face, the statute is clear that two attorneys must be appointed to represent a defendant promptly upon the defendant's request after the defendant is indicted for a capital crime. *See In re Sterling–Suarez*, 306 F.3d 1170, 1173 (1st Cir.2002) (holding that the statutory requirement applies promptly after indictment, not only after the Attorney General has made a determination to seek the death penalty). The question we address in this case is whether the defendant's right to be represented by two attorneys is extinguished once the threat of capital punishment has been irrevocably removed from the slate of available punishments.

In this case, the district court properly concluded that the defendant was not entitled to be represented by two attorneys after the government filed formal notice that it did not intend to seek the death penalty. This conclusion is compelled by *United States v. Dufur*, 648 F.2d 512 (9th Cir.1980), in which we held that the invali-

dation of the death penalty provision of 18 U.S.C. § 1111 in *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), eliminated a defendant's right under § 3005 to a second attorney in a capital prosecution. *Id.* at 515. *Dufur* noted that "the purpose of the two-attorney right is 'to reduce the chance that an innocent defendant would be put to death because of inadvertence or errors in judgment of his counsel.'" *Id.* (quoting *United States v. Shepherd,* 576 F.2d 719, 729 (7th Cir. 1978)). Thus, *Dufur* held that because the purpose of the statute "derive[d] from the severity of punishment rather than the nature of the offense, the elimination of the death penalty eliminates Dufur's right under 18 U.S.C. § 3005 to a second court-appointed attorney." *Id.; see also United States v. Steel,* 759 F.2d 706, 710 (9th Cir.1985) (reaffirming *Dufur's* conclusion that the right to second counsel is "eliminated along with the elimination of the death penalty").

Our reasoning and statutory construction in *Dufur* logically dictate the conclusion that the government's irrevocable decision not to pursue the death penalty eliminated Waggoner's right under § 3005 to a second court-appointed counsel. As the Third Circuit recently observed, "after the government declared that it would no longer seek the death penalty, the appellants were no longer capital defendants." *United States v. Casseus,* 282 F.3d 253, 256 (3d Cir.2002) (holding any error in refusing to appoint an additional counsel under § 3005 is harmless when the government declines to seek the death penalty).

*Dufur's* construction is also consistent with the overall structure of the federal death penalty statutes. Before a federal defendant is eligible for the death penalty, the government must provide notice of its intent to seek the death penalty and speci-

fy the aggravating factors upon which it intends to rely. *See* 18 U.S.C. § 3593 (1998). If the defendant is convicted of a death-qualifying offense, a separate hearing is held at which the government must prove these aggravating factors beyond a reasonable doubt. *See* 18 U.S.C. § 3592(b), (c) & (d) (1998); *see also* Department of Justice United States Attorneys' Manual § 9–10.000 *et seq.* Because aggravating factors must be found beyond a reasonable doubt before a federal defendant can receive a death sentence, these factors constitute elements of the capital offense. *See Ring v. Arizona,* 536 U.S. 584, 609, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) (stating that "Arizona's enumerated aggravating factors operate as 'the functional equivalent of an element of a greater offense' ") (quoting *Apprendi v. New Jersey,* 530 U.S. 466, 494 n. 19, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)); *see also Sattazahn v. Pennsylvania,* 537 U.S. 101, 123 S.Ct. 732, 739, 154 L.Ed.2d 588 (2003) ("Put simply, if the existence of any fact (other than a prior conviction) increases the maximum punishment that may be imposed on a defendant, that fact—no matter how the State labels it—constitutes an element, and must be found by a jury beyond a reasonable doubt."). Because additional elements must be proven, capital crimes are offenses distinct from the underlying offenses. *Id.*

Section 3005 requires that the defendant be provided two attorneys when he is indicted for a "capital crime." Just as all murder does not constitute the crime of capital murder, the term "capital crime" as used in § 3005 does not encompass the underlying offense when capital punishment cannot be imposed. *See United States v. Boone,* 245 F.3d 352, 365 (4th Cir.2001) (Kiser, J., concurring in part and dissenting in part) (asserting that an offense "does not become a '*capital* crime' until the prosecution gives notice that it

will seek the death penalty") (footnote omitted; emphasis in original).[2]

In short, as in *Dufur*, when a defendant is no longer subject to "indictment" for a "capital crime" because the threat that the death penalty will be imposed has been eliminated, the defendant no longer has a statutory right to a second court-appointed attorney to defend him at the trial of the non-capital offense. The district court was thus entirely correct to deny Waggoner's motion for continued representation by a second court-appointed lawyer after the government formally and irrevocably renounced any intention to seek a conviction for capital murder.[3]

### III

The district court also properly denied Waggoner's motion for a new trial based on newly discovered evidence. A defendant who seeks a new trial based on new or newly discovered evidence must show that (1) the evidence is newly discovered; (2) the failure to discover the evidence is not attributable to a lack of diligence by

the defendant; (3) the evidence is material to the issues at trial; (4) the evidence is neither cumulative nor impeaching; and (5) the evidence indicates that a new trial would probably result in an acquittal. *See United States v. Jackson*, 209 F.3d 1103, 1106 (9th Cir.2000); *United States v. Sarno*, 73 F.3d 1470, 1505–07 (9th Cir.1995). The evidence cited by Waggoner in support of his new trial motion was cumulative, impeachment-related, or both. *See id.* None of the tendered evidence was of such a character that it indicated that a new trial probably would result in an acquittal.[4] *Id.* Accordingly, we affirm the district court's denial of Waggoner's new trial motion.[5]

**AFFIRMED.**

**2.** The Fourth Circuit reached a contrary conclusion in *Boone*. We respectfully disagree with its conclusion for the reasons stated. In addition, *Boone* was predicated on the Fourth Circuit precedent of *United States v. Watson*, 496 F.2d 1125 (4th Cir.1973), a case we expressly declined to follow in *Dufur*. *Dufur*, 648 F.2d at 514–515.

**3.** We do not reach Waggoner's contention, raised for the first time in oral argument, that Waggoner had a Sixth Amendment right to a second court-appointed counsel. *See Balser v. Dept. of Justice*, 327 F.3d 903, 911 (9th Cir.2003) (noting that issues not raised in the opening brief are typically deemed waived).

**4.** Waggoner argues that this facet of his appeal should be reviewed under the test applicable to claims of negligent prosecutorial non-disclosure of exculpatory evidence. This negligent non-disclosure test requires a "new trial whenever the non-disclosed evidence

might reasonably have affected the jury's judgment on some material point." *United States v. Butler*, 567 F.2d 885, 890 (9th Cir. 1978). A review of Waggoner's challenge under this test does not alter the result of our analysis. We conclude that Waggoner is not entitled to a new trial because the evidence would not have affected the jury's judgment on any material point.

**5.** Waggoner also argues that the district court should have granted a new trial because of *Brady* violations by the government. *See Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). A careful review indicates that the evidence Waggoner characterizes as *Brady* material was either "marginal, ambiguous, cumulative, inadmissible, unreliable, inculpatory, irrelevant, or of negligible probative worth." *Sarno*, 73 F.3d at 1506. Thus, consideration of this evidence does not undermine our confidence in the jury verdict. *Id.*