IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| EDWARD SCOT HUSBANDS | § | |
| | § | No. 349, 2019 |
| Appellant Below, | § | |
| Appellant | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | C.A. No.: N18A-04-009 |
| DELAWARE DEPARTMENT OF | § | |
| EDUCATION AND DELAWARE | § | |
| PROFESSION STANDARDS BOARD, | § | |
| | § | |
| Appellees Below, | § | |
| Appellee. | § | |

Submitted: February 12, 2020
Decided: April 7, 2020

Before **SEITZ**, Chief Justice; **VAUGHN** and **TRAYNOR**, Justices.

## <u>ORDER</u>

This 7th day of April, 2020, after careful consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1)  In June 2015, Edward Scot Husbands, an administrator for the Milford School District, was charged with multiple counts of unlawful sexual contact with persons under thirteen years of age.  At his criminal trial in November 2016, Husbands was acquitted on all charges.  Despite the acquittal, the Department of Education ("DOE") revoked Husbands' teaching license and certifications. Husbands demanded a hearing before the DOE's Professional Standards Board ("Board"), which upheld the revocation.  Husbands appealed the Board's decision

to the Superior Court, which affirmed the Board's decision, and Husbands appealed to this Court.[1]

(2)    Husbands now claims in an argument that he did not advance in the Superior Court that he was denied due process during the Board hearing because he was not given adequate notice or an opportunity to be heard in defense of his teaching license.[2]  He also contends that the Superior Court erred when it held that the Board's final order was supported by substantial evidence and free from legal error.[3]

(3)    Because the purported due process violations do not amount to plain error and because the Board's order was supported by substantial evidence and free from legal error, we affirm the Superior Court's judgment.

*Husbands' Due Process Claim*

(4)    "This Court reviews claims of violations of constitutional rights *de novo*."[4] But "[o]nly questions fairly presented to the trial court may be presented for review."[5] Because Husbands did not present this argument below, we review for plain error. To establish plain error, "the error complained of must be so clearly

---

[1] *Husbands v. Delaware Dept. of Education*, 2019 WL 3248616 (Del. Super. Ct. July 19, 2019) (hereinafter *Opinion Below*).
[2] Opening Br. at 12.
[3] Opening Br. at 20.
[4] *Cohen v. State ex rel. Stewart*, 89 A.3d 65, 86 (Del. 2014).
[5] Supr. Ct. R. 8.

2

prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[6]

(5) For purposes of this order, we assume without deciding that Husbands had a right to not be deprived of his teaching license without due process.[7]

(6) "Due Process essentially requires that an individual be given a full and fair hearing before an impartial tribunal at a meaningful time and in a meaningful manner."[8] In an administrative proceeding, "due process entails providing the parties with the opportunity to be heard, by presenting testimony or otherwise, and the right of controverting, by proof, every material fact which bears on the question of right in the matter involved in an orderly proceeding appropriate to the nature of the hearing and adapted to meet its ends. Further, due process requires that the notice inform the party of the time, place, and date of the hearing and the subject matter of the proceedings."[9]

(7) Husbands argues that, in his case before the Professional Standards Board, "the risk of erroneous deprivation of his property interest was extremely high due to the complete absence of procedural safeguards."[10] In particular, he claims

---

[6] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986).
[7] Husbands' due process-reputation claim seems divorced from the remedy he seeks—reversal, rather than monetary damages. Given this discrepancy, we do not address whether he has any due process right regarding his reputation.
[8] *Cook v. Oberly*, 459 A.2d 535, 538 (Del. Ch. 1983)
[9] *Vincent v. E. Shore Markets*, 970 A.2d 160, 164 (Del. 2009)
[10] Opening Br. at 19.

that he "did not have a meaningful opportunity to defend his license revocation" at the hearing before the Professional Standards Board Hearing Officer.[11] In support of this argument, Husbands alleges that he did not receive notice of the hearing until "a mere 45 days"[12] before the hearing date and he did not receive a witness list until "less than 30 days before" the hearing.[13] Husbands claims that these timeframes made it "impracticable if not impossible" to "conduct any meaningful written discovery or conduct depositions of the witnesses."[14]

(8) Husbands' complaints are without merit. Husbands was granted a hearing upon his request.[15] The 45-days' advance notice of the *first* scheduled hearing far exceeds the 20-days' notice required under the Administrative Procedures Act ("APA")[16]—a time-frame that satisfies procedural due process.[17] Many of Husbands' subpoena requests were granted, and he was granted a continuance so that the subpoenaed parties had a reasonable amount of time to produce the requested documents.[18] And because of the continuance granted at Husbands' request, the

---

[11] *Id.* at 18.

[12] *Id.*

[13] *Id.* at 19. Husbands received the witness list 29 days before the hearing.

[14] *Id.*

[15] *Opinion Below* at *2.

[16] 29 *Del. C.* § 10122 (for case decisions), § 10131(d) (for hearings related to licenses).

[17] *See El-Roeiy v. The Bd. of Med. Licensure & Discipline of the State of Delaware*, 2014 WL 7150035 (Del. Super. Ct. Nov. 25, 2014) (finding no deprivation of procedural due process where an administrative agency gave notice in a manner that complied with 29 *Del. C.* §10122).

[18] App. to Opening Br. at A291–A315.

4

actual hearing was held eighty days after Husbands first received notice—four times the amount of time required by the APA's notice requirement.

(9)     Likewise, Husbands' claim that he was deprived of his right to conduct pre-hearing discovery is unpersuasive. Husbands has not identified any specific discovery request that was thwarted or denied by the Board. Had Husbands sought to depose a witness and run out of time, he could have moved for continuance on that basis—but he did not. And Husbands' claim that his receipt of a witness list "less than 30 days before"[19] the hearing constitutes a due process violation is unaccompanied by any legal authority or a persuasive showing of prejudice. In an administrative hearing, "[a] party has been afforded due process where the record indicates that it was given a full opportunity to answer the charges."[20] Husbands has failed to show why his receipt of the witness list "less than 30 days before"[21] the hearing deprived him of that opportunity when he could have sought depositions and filed for continuances had his requests for depositions been refused. Further, at his three-day-long hearing, Husbands had the opportunity to confront the witnesses that the State presented and was able to present his defense, all of which was followed by post-hearing briefs and oral argument.

---

[19] Opening Br. at 19.
[20] *BCBSD, Inc. v. Denn*, 2008 WL 1838462, at *4 (Del. Super. Ct. Apr. 22, 2008).
[21] Opening Br. at 19.

(10) Despite all the process afforded to Husbands, he argues that the Milford School District and the Department of Education "should have worked to reconcile his behavior and negotiate his resignation and/or serving as an administrator or teacher in the State of Delaware."[22] Due process does not require the government to take the route least-damaging to the plaintiff—it merely requires that the plaintiff be given a fair process. Here, Husbands was provided substantial process—including a hearing, a month-and-a-half notice of such hearing, and a witness list provided a mere two weeks after notice was given and 29 days before the hearing. Accordingly, we conclude that Husbands was not denied due process in his hearing before the Professional Standards Board. In short, Husbands has not identified any—much less plain—error in the process utilized by which DOE revoked his teaching license and certification.

*Substantial Evidence/Absence of Legal Error*

(11) When "the Superior Court has reviewed an administrative agency decision without receiving any evidence other than that presented to the agency, we do not review the Superior Court's decision directly."[23] "Instead, we examine the

---

[22] Opening Br. at 16.

[23] *Delaware Bd. of Med. Licensure & Discipline v. Grossinger*, 2020 WL 89529, at *8 (Del. Jan. 8, 2020); *Stoltz Mgmt. Co. v. Consumer Affairs Bd.*, 616 A.2d 1205, 1208 (Del. 1992) ("Where there is a review of an administrative decision by both an intermediate and a higher appellate court and the intermediate court received no evidence other than that presented to the administrative agency, the higher court does not review the decision of the intermediate court but, instead, directly examines the decision of the agency.").

agency's decision to determine whether the agency's ruling is supported by substantial evidence and free from legal error."[24] "Absent an abuse of discretion, the decision of the agency must be affirmed."[25]

(12)  Husbands argues that the Superior Court erred when it ruled that Board's decision was supported by substantial evidence and free from legal error.[26] Specifically, Husbands contends that the Hearing Officer's decision was based solely on hearsay testimony and argues that the Officer failed to make credibility determinations of the mothers who testified as witnesses and whose testimony helped corroborate the sworn prior statements of the children.[27]

(13)  It is well settled in Delaware that hearsay evidence is permissible in administrative hearings, so long as that evidence is not the sole basis for the hearing officer's decision.[28]

(14)  To be sure, the hearsay evidence offered against Husbands, in the form of the prior statements and testimony of the non-testifying child victims, was damning. Of the five children who submitted sworn statements, three of them reported Husbands touching the front of their pajama pants while he was either

---

[24] *Id.*

[25] *Stoltz*, 616 A.2d at 1208.

[26] Opening Br. at 20.

[27] *Id.* at 21–23.

[28] *Larkin v. Gettier & Assoc.*, 1997 WL 717792, at *3 (Del. Super. Ct. Nov. 14, 1997).

laying down next to them on an air mattress or sharing a blanket with them while watching a movie.[29] Another child, a thirteen-year-old, stated that she woke to Husband's hand lying on her stomach.[30] The fifth child, who was Husbands' student and babysat Husband's child, reported that Husbands texted her continuously while out with his wife. After he and his wife returned, Husbands asked her to come to his "man cave area" in the basement while his wife was upstairs with the his child.[31] When this fifth child sought to leave, Husbands asked her if she wanted to see his camper and, when she asked if he was going to turn the lights on, Husbands replied that the lights didn't work.[32]

(15) We have reviewed the record of the hearing before the Board, and we are satisfied that the Board's decision did not rest solely on the hearsay evidence presented to it.[33] Multiple witnesses testified over the course of the three-day hearing, including the four mothers, three Milford School District administrators, a Department of Education investigator, a Delaware State Police Detective, and Husbands.[34] And although there was hearsay sprinkled throughout these witnesses'

---

[29] *Opinion Below* at *4, *7, *9.
[30] *Id.* at *11.
[31] *Id.* at *12.
[32] *Id.*
[33] Although, as mentioned, we do not—given the procedural posture of this appeal—review the Superior Court's decision directly. Even so, we are compelled to commend the court for its detailed and exhaustive treatment of the Professional Standards Board record.
[34] Opening Br. at 8–9.

testimony, a sufficient amount of their testimony was not hearsay and corroborated the prior sworn testimony of Husbands' child victims. For example, one of the child victim's mothers testified about her child's surprising reluctance to go to Husbands' house, which created tension in the household.[35] All of the mothers testified as to their experiences at their child's CAC interview.[36] The mothers also "provid[ed] their own first-hand impressions of the devastation they witnessed in their daughters"[37] in the wake of Husbands' abuse. And Husbands' own testimony provided non-hearsay evidence in support of the Board's decision. He admitted that, during a family party, he directly texted one of the children about sleeping over, even though his own daughter and the child's mother were both in the room.[38] And he confirmed that he went into the bedroom that Child 1 and Child 7 were sleeping in on the night that Child 1 claims that there was improper touching.[39] Nor does Husbands challenge the testimony of his coworkers at Milford School District, who presented their own first-hand impressions of Husbands' conduct towards the alleged victims. Thus, the Hearing Officer did not rely solely on hearsay testimony in reaching his conclusion that Husbands committed sexual offenses against children.

---

[35] App. to Opening Br. at A526–27. *Opinion Below* at *27.
[36] *E.g.*, App. to Opening Br. at A613; *Opinion Below* at *27–28.
[37] *E.g.*, App. to Opening Br. at A568; *Opinion Below* at *28.
[38] App. to Opening Br. at A874–74.
[39] *Id.* at A874–76.

(16) Although, as mentioned, in the context of this appeal from an administrative agency decision, we do not review the Superior Court's decision directly, we note that the Superior Court accurately observed that it is "well-settled law that hearsay evidence is admissible in administrative hearings."[40] Nevertheless, the court's treatment of Husbands' hearsay objection during the hearing before the Hearing Officer and, in particular, its conclusion that Husbands' objection was not sufficiently specific to preserve a claim of error, warrants comment.

(17) During the hearing, when the only remaining DOE witnesses were the child witnesses whose "testimony" would consist of the transcripts of their criminal trial testimony, Husbands' counsel objected:

> First I would like to . . . lodge an objection for the record. To the extent that there are only people remaining on the list for the State's testimony who are giving statements of statements, the entirety of the State's case is made of hearsay and there can be no conclusions made by the administrative tribunal on the basis of hearsay. It seems those are the only people left on the witness list. And I wanted to make that observation now and renew it at the end, and I will continue with my cross examination . . . .[41]

---

[40] *Opinion Below* at \*25. *See BCBSD*, 2008 WL 1838462, at \*4 ("In the context of an administrative agency hearing, due process requirements are less stringent than those required for a judicial hearing.").

[41] *Opinion Below* at \*25.

DOE's counsel responded that the prior testimony of the children, who would not testify before the Hearing Officer, was "absolutely not hearsay"[42] and, in any event "the strict rules of evidence [did] not apply."[43]

(18)   The trial transcripts are hearsay because they are statements not made while the declarant is testifying at the current hearing, and DOE was offering the statements to prove the truth of the matter asserted in the statement.[44] DOE's assertion to the contrary during the hearing was mistaken. Once the objection to hearsay was lodged, the burden shifted to DOE to counter that objection by providing an exception to inadmissibility.

(19)   Indeed, the prior testimony may have been admissible under the former-testimony exception set forth in D.R.E. 804, if the witnesses were unavailable. But when Husbands argued in the Superior Court that DOE had not made a showing before the Hearing Officer that the witnesses were unavailable, DOE countered that, because Husbands did not "cite to D.R.E. 804(a) or 804(b)(1), or use the word 'unavailable' in his objection,"[45] he did not properly preserve his hearsay objection. Such an argument is misguided. D.R.E. 804, by its very terms, addresses *exceptions* to the rule against hearsay—not hearsay itself. The burden of invoking D.R.E. 804—

---

[42] *Id.*
[43] *Id.*
[44] D.R.E. 801(a).
[45] DOE's Super. Ct. Answering Br. at 12.

and proving that it applies—should therefore be on the proponent of the evidence.

Nevertheless, the Superior Court sided with the DOE:

> Husbands failed to state the specific ground of "unavailability" and it was not apparent from the context. His violation of D.R.E. 103(a)(1)(B) denied the DOE the opportunity to issue a proffer as to the children's unavailability and offer expert testimony as required under 11 *Del. C.* §3513, or in the alternative, to call the minor children to testify live at the Hearing. Husbands failed to present a claim of error on this issue.[46]

(20)  This analysis is incorrect in our view. To preserve an objection, the objector need only state the specific ground for the objection[47]—here, the ground was hearsay. The objector need not negate the applicability of exceptions to the rule; it is the evidence's proponent's obligation to identify any applicable exceptions. But DOE and the Superior Court's analysis mistakenly treats the out-of-court declarants' unavailability as a "ground" for Husbands' hearsay objection, instead of as a predicate for the application of a hearsay *exception* under D.R.E 804. In other words, they conflate admissible hearsay with evidence that is not hearsay, thus shifting the burden of negating the applicability of exceptions to the objector.

---

[46] *Opinion Below* at *26.

[47] D.R.E. 103. "To make a sufficiently specific objection, the opponent should name the generic evidentiary rule being violated: 'calls for information protected by the attorney-client privilege,' 'lack of authentication,' not the best evidence,' or '*hearsay*'—the level of specificity found in the phrasing of the titles of the various articles in the Federal Rules of Evidence. Under the prevailing view, it is unnecessary to be any more specific." 1 Kenneth S. Broun, *McCormick on Evidence* § 52, at 359–60 (7th ed. 2013); *see U.S. v. Shannon*, 766 F.3d 346, 355–56 (3d Cir. 2014) (finding an issue regarding admissibility of evidence preserved for review, even though the objector did not mention the magic words "*Doyle*" or "*Miranda*"). There is, however, a minority rule that requires specific reference to missing foundational elements. *See, e.g., U.S. v. Steel*, 759 F.2d 706, 712 (9th Cir. 1985).

(21) In the end, this mistake does not affect the soundness of the Superior Court's ultimate conclusion, because the Hearing Officer was permitted to consider hearsay so long as his decision did not rest entirely on it.

(22) Husbands also argues that the Board committed legal error because the Hearing Officer did not make credibility determinations of the testifying mothers. This argument is unpersuasive. First, even if the Hearing Officer had determined that the mothers were not credible, his decision would still have been supported by the testimony of Husbands' three colleagues, the DOE investigator, and Detective Robert Truitt, a detective in the Delaware State Police Major Crimes Unit. Second, we read the Hearing Officer's decision as making an implicit finding that the mothers, who largely corroborated the statements of their children, were credible. That the Hearing Officer did not say the magic words, "I find the testimony of the mothers to be credible," does not mean that no credibility assessment was made.

(23) The Board's decision upholding the DOE's revocation of Husbands' teaching license was supported by sufficient evidence—including testimony from a police detective, three of Husbands' colleagues, and a DOE investigator as well as hearsay statements by Husbands' victims. And the Board did not commit legal error in failing to explicitly state that the testifying mothers were credible.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court and the March 20, 2018 Final Order of the Delaware Professional Standards Board are AFFIRMED.

BY THE COURT:

/s/*Gary F. Traynor*
Justice