**UNITED STATES of America, Appellee,**

v.

**Walter James WEDDELL, Appellant.**

**No. 77–1177.**

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 14, 1977.
Decided Dec. 8, 1977.

STEPHENSON, Circuit Judge.

Walter James Weddell appeals from his conviction by a jury on two counts of murder in the second degree.[1] In this appeal Weddell raises numerous issues including the district court's jurisdiction, the propriety of various instructions given to the jury, and the district court's refusal to appoint a second defense attorney. We affirm.

The record reveals that on November 11, 1976, appellant Weddell fired four shots from a revolver held in his jacket pocket in the Legion Bar at Fort Yates, North Dakota. William Elk suffered four gunshot wounds at point-blank range during the incident and died several days later. A single slug was recovered from Elk's body. James Longie was also wounded by a single slug fired from Weddell's revolver during the incident. Longie died at a Fort Yates hospital shortly after the shooting incident. The other two slugs were found lying on the floor of the Legion Bar. Because Elk was struck by each slug fired from Weddell's revolver, Longie was apparently wounded by a bullet which had passed through Elk's body.

■ The first issue raised by appellant Weddell concerns the district court's jurisdiction. Although counsel at trial stipulated that the alleged incident in Fort Yates occurred within the Standing Rock Indian Reservation, a reservation under the jurisdiction of the United States, it is well settled that jurisdiction cannot be conferred by an agreement of the parties absent a proper jurisdictional basis. *Mitchell v. Maurer*, 293 U.S. 237, 244, 55 S.Ct. 162, 79 L.Ed. 338 (1934). Therefore, the jurisdiction over the offenses allegedly committed by Weddell rests with the federal courts only if the acts occurred within the boundaries of the Standing Rock Indian Reservation.

■ In *United States v. Long Elk,* 565 F.2d 1032 (8th Cir. 1977) (Bird Horse), this court considered a similar problem. It was held there that a 1913 congressional enact-

Kent A. Higgins, Bismarck, N. D., for appellant.

James S. Hill, Asst. U. S. Atty., Bismarck, N. D., argued, James R. Britton, U. S. Atty., Fargo, N. D., on brief, for appellee.

Before GIBSON, Chief Judge, and LAY and STEPHENSON, Circuit Judges.

---

1. The Honorable Bruce M. Van Sickle, United States District Judge for the District of North Dakota, presiding, imposed two concurrent sentences of 25 years imprisonment.

ment did not disestablish any part of the Standing Rock Indian Reservation and consequently federal jurisdiction existed over the Reservation as originally constituted, including the town of Fort Yates. Accordingly, we hold that federal jurisdiction existed in the instant case.

■ Weddell next contends that the district court's instructions as to the relationship between the two counts of the indictment are erroneous and contradictory.[2] Instruction 17 read as follows:

Legal malice does not require ill will toward the victim. A crime may be murder although the person killed was not the one whom the accused intended to kill—such as in the case where one shooting at another kills a bystander. Actual malice toward the unintended victim is not necessary. The intent is, in effect, transferred to the person whose death has been caused.

The result is that the slayer may be held guilty of murder, manslaughter, or excusable or justifiable homicide, according to the attendant circumstances. If the killing of the intended victim can be reduced by the circumstances to murder in the second degree, or to manslaughter in any of the degrees, then the unintended and accidental killing of the bystander resulting from any act designed to take effect upon the intended victim would likewise be reduced to the same grade of offense as would have followed the death of the victim intended to be killed.

Instruction 42 read as follows:

A separate crime or offense is charged in each count of the indictment. Each charge and the evidence pertaining to it should be considered separately. The fact that you may find the accused guilty

or not guilty as to one of the offenses charged should not control your verdict as to any other offense charged.

We note at the outset that appellant did not state any objections to instruction 42 at trial. In addition, although appellant voiced two objections to instruction 17, neither objection relates to the appellant's present contention of inconsistent instructions.[3] The government, however, did object to instruction 42 as being inconsistent with instruction 17. In response the trial court expressed the view that the jury should consider the death of Longie separately, stating that "it's conceivable that a verdict of not guilty as to Mr. Longie could arise out of your proof of facts * * *."

We are mindful of the fact that the jury twice expressed some confusion over the relationship between the two instructions. Upon the jury's first inquiry, the district court instructed the jury to reconsider the instructions as a whole. After the jury's second inquiry, the district court orally instructed the jury that they must look at the intent that was used with reference to the intended victim. Once that intent was found, the jury need not reexamine the question of intent concerning the accidental victim. Therefore, limited by their finding of intent as to the intended victim, Elk, the jury could possibly find a lesser degree or no degree as to Longie, the unintended victim. They could not, however, find a greater degree than found as to Elk. The court additionally stated that the jury must consider all of the necessary elements concerning Longie even though a verdict of guilty or not guilty was found as to Elk. Finally, the court reiterated during this oral instruction that there must be evidence to support the jury's decision and the court could not discuss with the jury the evidence introduced at trial.

2. Although the appellant also argues that the district court erred in rejecting the defendant's requested instruction on malice, we are convinced that instruction 15 given by the trial court concerning "malice aforethought," "malice," and "premeditation" was proper. *See* E. Devitt and C. Blackmar, Federal Jury Practice and Instructions § 43.05 (2d ed. 1970).

3. Appellant's first objection to instruction 17 concerned the definition of malice. However, the definition of malice was properly covered in instruction 15. *See* n.2, *supra*. The second objection related to appellant's contention that the government ineffectively charged Weddell under 18 U.S.C. § 1111(a) because the indictment did not refer to Longie as an unintended victim. The trial court properly overruled appellant's objections to this instruction.

Although instructions 17 and 42, when read in conjunction with each other, are not models of clarity, we are persuaded that they adequately cover the applicable law and that appellant Weddell has failed to demonstrate prejudice as a result of any confusion arising from the two instructions. After the jury's second inquiry, the district court clearly explained to the jury that instruction 17 (concerning transferred intent) was merely a limiting instruction as to one of the elements (intent) of the offense in each count. The jury, under instruction 42, was still required to look at each offense and proof of all the elements thereof separately.

■ In addition to arguing that the two instructions are contradictory, Weddell further contends that it is highly doubtful that instruction 17 is a correct statement of the law. Weddell argues that the jury might have found in this case that Elk's death was the result of a legitimate self-defense while Longie's death was the result of lack of due caution and, therefore, involuntary manslaughter under 18 U.S.C. § 1112. Assuming arguendo that instruction 17 was incorrect,[4] we are unable to perceive how Weddell was prejudiced. At trial Weddell claimed self-defense in the shooting of Elk. If the jury had accepted Weddell's theory of self-defense,[5] Weddell would have been exonerated under instruction 17 as to Longie's death. Thus, the error, if any, under instruction 17 was to the defendant's benefit.

■ Finally, Weddell, contends that the district court erred in rejecting his request for the appointment of a second attorney pursuant to 18 U.S.C. § 3005. The relevant portion of 18 U.S.C. § 3005 provides:

Whoever is indicted for treason or other capital crime shall be allowed to make his full defense by counsel learned in the law; and the court before which he is tried, or some judge thereof, shall immediately, upon his request, assign to him such counsel, not exceeding two, as he may desire * * *.

It is clear from the wording of the statute that section 3005 is applicable to "treason or other capital crime." At trial both the government and defense counsel were agreed that *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), precluded the imposition of the death penalty under 18 U.S.C. § 1111. The question then becomes whether Weddell is still entitled to two attorneys pursuant to section 3005 even though *Furman v. Georgia, supra*, has precluded the imposition of the death penalty in this case.

In *United States v. McNally*, 485 F.2d 398, 407 (8th Cir. 1973), *cert. denied*, 415 U.S. 978, 94 S.Ct. 1566, 39 L.Ed.2d 874 (1974), this court held that in a case where *Furman v. Georgia, supra*, had precluded the imposition of the death penalty, the case lost its capital nature as charged in the indictment. Accordingly, the defendant was not improperly denied the benefits of Fed.R.Crim.P. 24(b), calling for 20, instead of 10, peremptory challenges. *Accord, United States v. Kaiser*, 545 F.2d 467, 475 (5th Cir. 1977); *United States v. Maestas*, 523 F.2d 316, 318–19 (10th Cir. 1975); *Reed v. United States*, 432 F.2d 205 (9th Cir. 1970), *cert. denied*, 401 U.S. 957, 91 S.Ct. 986, 28 L.Ed.2d 242 (1971); *United States v. Freeman*, 380 F.Supp. 1004 (D.N.D.1974). *Contra, United States v. Watson*, 496 F.2d 1125 (4th Cir. 1973). We conclude that this case, under *Furman v. Georgia, supra*, lost its capital nature as charged in the indictment. It follows that the district court did not err in rejecting Weddell's request for

---

4. Weddell cites *People v. Jackson*, 390 Mich. 621, 212 N.W.2d 918, 919 (1973), for the proposition that the unintended killing of an innocent bystander, although not murder if justifiably committed in proper self-defense, may be manslaughter. Other jurisdictions have apparently held that the grade of the crime in such cases will be the same as though the accused had killed the person whom he had intended to kill.

*See* 40 C.J.S. *Homicide* § 18 (1944); 40 Am. Jur.2d *Homicide* § 11 (1968).

5. The jury clearly rejected Weddell's theory of self-defense as to Elk by finding him guilty of murder in the second degree. Undoubtedly the fact that Weddell fired four shots into the body of Elk played some part in the jury's rejection of the self-defense theory.

the appointment of a second attorney pursuant to 18 U.S.C. § 3005.[6]

Affirmed.

---

**6.** It should be noted that Weddell was allowed an investigator and gained maximum discovery prior to trial.