**UNITED STATES of America,**
**Plaintiff,**

v.

**Alfonso PESANTE–LOPEZ, Defendant.**

**Criminal No. 07–396 (FAB).**

United States District Court,
D. Puerto Rico.

Oct. 23, 2008.

Jacabed Rodriguez–Coss, United States Attorney's Office, Vernon Benet Miles, United States Attorney's Office, District of Puerto Rico, San Juan, PR, for Plaintiff.

Jorge E. Vega–Pacheco, Jorge E. Vega Pacheco Law Office, Rio Piedras, PR, William D. Matthewman, Seiden, Alder & Matthewman, Coral Springs, FL, for Defendant.

## MEMORANDUM AND ORDER

BESOSA, District Judge.

A Grand Jury indicted Defendant Alfonso Pesante–Lopez on September 26, 2007 for violations of 18 U.S.C. § 2119(3), a statute carrying the death penalty as a potential sentence. (Docket No. 3) On October 3, 2007, the Court appointed defendant Pesante a second attorney, William D. Matthewman, to provide counsel "learned in the law applicable to capital cases" as provided by 18 U.S.C. § 3005 ("learned counsel"). (Docket No. 21) On September 10, 2008, after defense counsel's participation in mitigation efforts, the government formally announced that it would not certify the defendant's case for the death penalty. Following the government's announcement, the Court ordered Mr. Pesante to show cause why learned counsel should not be excused. (Docket No. 116)

Pending before the Court is defendant Pesante's motion and supplemental motion in opposition to the removal of learned counsel. (Dockets No. 117 and 123, respectively) For the reasons stated below, the Court **DENIES** the defendant Pesante's motion and orders his learned counsel removed from the case within a time period reasonable to impart the case to Mr. Pesante's remaining attorney effectively.

## I. Background

Beyond dispute is the profound importance of adequate representation for persons exposed to the death penalty. The quality of defense in capital cases is of such unique consequence that Congress enacted statutory safeguards to reduce error in the representation of persons exposed to capital punishment. Congress codified a federal capital defendant's right to representation by two attorneys, one of whom must be "learned in the law applicable to capital cases." 18 U.S.C. § 3005. In pertinent part, the section reads:

> Whoever is indicted for treason or other capital crime shall be allowed to make his full defense by counsel; and the court before which the defendant is to be tried, or a judge thereof, shall promptly, upon the defendant's request, assign 2 such counsel, of whom at least 1 shall be learned in the law applicable to capital cases . . .

18 U.S.C. § 3005 (2000).

The parties here do not contest the applicability of the capital defendant's right to two attorneys *per se*. The question now

before the court regards the scope of a capital defendant's right to learned counsel in cases where a defendant's exposure to the death penalty is unalterably eliminated through the government's decision not to pursue the death penalty.

The majority of circuit courts of appeals that have treated the issue agree that a capital defendant loses his right to a second attorney under section 3005 should his or her exposure to the death penalty cease. *See United States v. Waggoner*, 339 F.3d 915 (9th Cir.2003) (holding that the government's determination not to seek the death penalty extinguished defendant's statutory right to learned counsel); *United States v. Casseus*, 282 F.3d 253, 256 (3rd Cir.2002) (concluding that the government's decision not to pursue the death penalty eliminated defendant's right to two attorneys); *United States v. Grimes*, 142 F.3d 1342, 1347 (11th Cir.1998)("[A] defendant is not entitled to benefits he would otherwise receive in a capital case if the government announces that it will not seek the death penalty or the death penalty is otherwise unavailable by force of law"); *United States v. Shepherd*, 576 F.2d 719 (7th Cir.1978)(holding that the defendant was not entitled to representation by two attorneys when a Supreme Court decision rendered a death penalty sentence impossible as a matter of law); *United States v. Weddell*, 567 F.2d 767 (8th Cir.1977) (reaching the same conclusion as the Seventh Circuit).

Thus far, only the Fourth Circuit Court of Appeals has come to a different conclusion, holding that a capital defendant's statutory right to learned counsel is absolute regardless of whether the government chooses to pursue the death penalty. *See United States v. Boone*, 245 F.3d 352, 361 n. 8 (4th Cir.2001). We respectfully disagree with the Fourth Circuit's holding in *Boone*, and are in accord with the majority view expressed above that a defendant's right to learned counsel ceases when the threat of a death penalty sentence ceases.

## II. Discussion

On its face, section 3005 assigns learned counsel promptly upon the request of any defendant "indicted for treason or other capital crime." *See In re Sterling–Suarez*, 306 F.3d 1170, 1173 (1st Cir.2002). Defendant Pesante contends that because the statute fails to mention, on its face, any specific instruction regarding circumstances foreclosing the death penalty as a possible sentencing option, it therefore follows that the right to a second attorney turns exclusively on the defendant's indictment for a capital crime. (Docket No. 117) Mr. Pesante maintains that the right to learned counsel then endures regardless of whether any ongoing exposure to the death penalty actually exists. Mr. Pesante's reading of the statute therefore bases the applicability of the statute solely on the presence of an *indictment* for a capital crime. *See Boone*, 245 F.3d at 360 (reasoning that "if Congress wished to limit the two-attorney requirement to cases in which the death penalty is actually sought, it could easily have done so"). The Court understands the statute's purpose and subsequent applicability differently, and therefore reaches the opposite conclusion.

First, we disagree with Mr. Pesante's position that section 3005 turns only on whether one has been indicted for a capital crime. This is a disagreement in part provoked by conflicting interpretations of the term "capital crime." The word "capital" when modifying "crime" indicates exposure to punishment by death. *See Shepherd*, 576 F.2d at 728 (citing Webster's Third New International Dictionary 332 (1991)). Although there may be instances in which the word "capital" acts only to categorize an alleged crime's seriousness, in the context of section 3005 the provision of enhanced representation more sensibly

refers to the special requirements of a case in which the defendant faces a punishment of death.[1]

Adopting Mr. Pesante's interpretation of "capital crime" as descriptive only of the nature of the crime would require us to believe that Congress intended to appoint two attorneys, specifically one who possesses specialized learning and experience "applicable to capital cases," to a defendant facing issues similar to those found in other serious crimes cases. Notably, Congress has not provided two attorneys for defendants except those indicted for capital crimes under section 3005. In fact, as the Seventh Circuit Court of Appeals points out in *Shepherd*, many non-capital criminal cases involve more complex and difficult representation than the representation required in death penalty cases, yet Congress provides a right to learned counsel only for those cases involving a "capital crime." *Id.* at 729. We therefore come to the conclusion that "the term 'capital crime' as used in section 3005 does not encompass the underlying offense when capital punishment cannot be imposed." *United States v. Waggoner*, 339 F.3d 915, 918 (9th Cir.2003); *see also Amsler v. United States*, 381 F.2d 37 (9th Cir.1967) (holding that "it is the possibility of an imposition of a death penalty under the indictment, not the evidence produced at the trial, which determines if the accused is entitled to the procedural benefits available in capital cases").

Second, we respectfully disagree with defendant Pesante's position that Congress has been silent with regard to its purpose in assigning two attorneys to capital defendants at the indictment stage. Congress amended section 3005 in conjunction with its enactment of the Federal Death Penalty Act in 1994, adding descriptive language to the qualifications required by appointed learned counsel: from "... counsel learned in the law ..." to its current construction "... learned in the law applicable to capital cases." Federal Death Penalty Act (Title VII of the Violent Crime Control and Law Enforcement Act of 1994) § 60026, Pub.L No. 103–322, 108 Stat. 1796.

The concurrent amendment of the statute's language with the enactment of the Federal Death Penalty Act strongly suggests that Congress intended the legislative actions to bear on one another. It strains credibility to conclude that Congress clarified the meaning of "learned" counsel in section 3005 to specifically entail that counsel be "learned in the law applicable to capital cases" without intending that it refer to the statutory provisions of the Death Penalty Act. The more logical conclusion for the simultaneous legislation is that Congress enhanced the qualifications of learned counsel for cases falling under the sentencing and appeal processes of the Federal Death Penalty Act. *See Boone*, 245 F.3d at 366–67 (Kiser, J., dissenting).[2] We

---

1. Many other circuit court decisions indicate that the procedural benefits conferred by Congress to capital defendants are inapplicable when the possibility of the death penalty is eliminated. *See United States v. Kaiser*, 545 F.2d 467, 475 (5th Cir.1977); *United States v. Crowell*, 498 F.2d 324, 325 (5th Cir.1974); *United States v. Goseyun*, 789 F.2d 1386, 1387 (9th Cir.1986); *United States v. Maestas*, 523 F.2d 316, 319 (10th Cir.1975); *Loux v. United States*, 389 F.2d 911, 915 (9th Cir.1968). Though the above cited cases refer to procedural safeguards not at issue here, we cite

them to suggest a strong consensus among the circuits that the "capital" nature of a crime refers to its potential to be punished with death.

2. Though we draw on Judge Kiser's dissent in *Boone* analyzing the interplay between these two legislative actions, we do not agree with his conclusion that "these provisions come into play only after the government has decided to pursue the death penalty and apprised the court of its intention to do so." To the contrary, we hold here for reasons explained further below that Congress intended to pro-

believe the amended modification of learned counsel's qualifications shows that Congress intended the right to learned counsel to apply only to those cases in which the death penalty remained a viable possibility, demanding legal experiences and learning specific to that possibility. To conclude otherwise would render pointless the enhanced qualification requirements for counsel.

Finally, we reject defendant Pesante's position because we believe that the purpose underlying this statutory protection reflects a distinctly moral dimension associated with capital punishment that the Mr. Pesante's interpretation fails to address. It is precisely because *death* is a uniquely severe punishment, one which engenders discomfort and demands pause among even the most objective trier of fact, that we believe Congress adopted the safeguard provided by section 3005.

This court thus regards the statutory right to learned counsel as a procedural affirmation of the grave finality of the *sentence* made possible by the charge, not an affirmation of the seriousness or the complexity of the charged *crime* itself. As aptly reasoned by the Seventh Circuit Court of Appeals, the provision's adoption is more humane than pragmatic; it reflects a concern "to reduce the chance that an innocent defendant would be put to death because of an inadvertence or errors in judgment of his counsel, and to attempt to prevent mistakes that would be irrevocable because of the finality of the punishment." *Shepherd*, 576 F.2d at 729. *See Waggoner*, 339 F.3d at 919(holding that the purpose of the statute derives from severity of the punishment, not the nature of the offense).

To continue providing special representation to a defendant whose circumstances no longer differ from other defendants charged with serious crimes, and whose circumstances no longer raise the unique moral concerns of the death penalty, runs counter not only to the purpose of the statute, but to public policy more generally. A defendant involved in what has for all practical purposes become a "regular" case ought not be entitled to greater representation than others like him facing serious criminal charges. It follows that defendant's rights are not violated by removing learned counsel after he no longer faces capital punishment.

Importantly, for the purpose of appointing learned counsel, this court views the offence for which defendant Pesante was indicted to be a capital crime up and until the point at which the death penalty becomes an impossibility. We explicitly reject an alternative construction, in which the offense would not be deemed capital *until* the government officially certifies it and provides notice of its intention to seek the death penalty. The latter reading would frustrate the moral and the pragmatic objectives of section 3005 discussed above, preventing a defendant from utilizing the assistance of an attorney experienced in capital trials at a point when the formidable shadow of the death penalty still looms and efforts to mitigate the prosecutorial approach are anticipated by the prosecutorial process. *See In re Sterling–Suarez*, 306 F.3d at 1175 (holding that there are practical reasons to treat some cases as capital from indictment forward until the death penalty option is eliminated); *see also United States v. Watson*, 496 F.2d 1125, 1131 (4th Cir.1973) (Murray, J. dissenting)(arguing that the first Congress to pass the learned counsel provision "felt it desirable to have two lawyers keeping watch on each other when the life of the

---

vide learned counsel only for capital cases, but that a case is capital in nature from the indictment stage up until the point the government officially declares its intention not to seek the death penalty.

client was at stake"). So long as the government's prosecution effort makes the death penalty a very real possibility, the defendant must be considered a capital defendant entitled to the appointment of learned counsel.

Lastly, this court finds defendant Pesante's argument regarding the disruption and, hence, disadvantage to him caused by the removal of learned attorney to be worthy of address. According to Mr. Pesante, removing learned counsel at this stage of proceedings, eleven months into the prosecution, will leave his remaining lawyer "... with a great deal of difficulty maintaining the client's trust and confidence through the crucial trial stage." (Docket No. 123) Second, defendant Pesante claims he will be injured because he has relied on learned counsel Mr. Matthewman's expertise regarding the legal, factual and theoretical complexities raised by his case, such that Mr. Matthewman's removal will deprive Mr. Pesante of needed expertise and leave remaining counsel, a solo practitioner, overwhelmed by the workload of the case. (Docket No. 117; Docket No. 123)

It is certainly not the job of the court to facilitate or guarantee a vigorous attorney-client relationship, nor to resolve retroactively any shortcomings in the communications between attorneys appointed to a capital defendant. Neither is it the role of the court to facilitate proper delegation of tasks or divisions of the workload between two attorneys appointed to a capital defendant. If Mr. Pesante's relationship with his remaining attorney is harmed by the removal of learned counsel, it is due to the failure of both appointed attorneys to build and maintain a suitable attorney-client relationship with him, to clarify to Mr. Pesante the nature of their shared role as appointed counsel, and to warn him of the possibility of learned counsel's removal should the defendant's exposure to the death penalty cease. If Mr. Pesante is harmed because his remaining counsel is overwhelmed by the complexity and workload of the remaining case, it is due to the failure of the two attorneys to delegate tasks and share the workload adequately in the event that learned counsel's appointment was terminated. Furthermore, as discussed above, the removal of the death penalty as a possible sentence has transformed defendant Pesante's case into a regular criminal case for which, regardless of its complexities, his remaining attorney ought to be capable of preparing for litigation.[3] Mr. Pesante's submissions on these points are unconvincing.

The court does agree with defendant Pesante's general position that the removal of learned counsel should not cause undue disruption or disadvantage to his case. Mr. Pesante cites guidelines for the administration of the Criminal Justice Act as support for this more general position. *See* Chapter VI, Guidelines for the Administration of the Criminal Justice Act and Related Statutes, Volume 7 at 6.02(B)(2) ("guidelines"). While these guidelines are not binding, they persuasively articulate the pragmatic concerns raised by the removal of learned counsel in the larger context of the statute's original objective of providing a benefit to capital defendants.[4]

3. While the benefit of learned counsel's expertise may still be desirable in a case which defendant claims involves complex unresolved issues, Congress has not seen fit to provide for more than one attorney based on the peculiarities or complexities of a given case except for cases involving the death penalty. *See Shepherd,* 576 F.2d at 729.

4. Note that these guidelines specifically discuss how to reduce the rate of attorney compensation following the determination that the death penalty will not be sought without harming the defendant.

We find the guidelines persuasive with regard to the court's protection of a defendant who loses his right to learned counsel during the transformation of his charge. The guidelines suggest that, absent "extenuating circumstances," a court should make an appropriate reduction in the number of counsel following the determination that the death penalty will not be sought. *Id.* Further, the guidelines suggest that the court should consider in its determination of whether extenuating circumstances exist: the need to avoid disruption; whether the timing of the government's decision not to pursue the death penalty occurred late in the proceedings; whether the case is unusually complex; and any other factors that could inhibit effective representation. *Id.*

The purpose of the right to learned counsel is to benefit the capital defendant because of the unique circumstances he faces. A defendant who has the good fortune to avoid the death penalty, possibly as a direct consequence of the defense provided by his learned counsel, would be made the ironic winner of a pyrrhic victory should the removal of learned counsel result in injury to his underlying criminal defense. Therefore some provision should ensure a smooth departure of learned counsel in a case where the defendant no longer faces the death penalty.

A court need not go so far as to retain learned counsel to avoid the harms described by the guidelines and, indeed, does not have the discretion to do so as earlier explained, regardless of what circumstances, extenuating or otherwise, exist. Instead, a court may mitigate the possible disruption caused by removal of learned counsel by allowing a reasonable amount of time for that removal. A "reasonable amount of time" is by no means an invitation for learned counsel Mr. Matthewman's continued involvement in defendant Pesante's case. The court trusts that allotting Mr. Pesante's two attorneys a brief period to transfer responsibility for the case's defense effectively is an appropriate safeguard of section 3005's purpose to benefit, not harm, a capital defendant.[5]

### III. Conclusion

Defendant's motion and supplementary motion in opposition to the removal of learned counsel are **DENIED**. The court orders learned counsel Mr. Matthewman removed from defendant Pesante's case within a time reasonable to effectively impart the case to Mr. Pesante's remaining attorney. Defendant Pesante shall advise the court no later than **November 7, 2006** if he requires additional time prior to learned counsel Mr. Matthewman's removal from the case.

**IT IS SO ORDERED.**

---

**5.** It is this Court's understanding that compensation for learned counsel will cease at the time of his official removal, to occur within a reasonable time as ordered and explained here. Remaining local counsel's compensation continues undisrupted according to local attorney fee structures until the closure of this case.