**UNITED STATES of America,**
**Plaintiff,**

v.

**Robert LEDBETTER, et**
**al., Defendants.**

**Case No. 2:14–cr–127.**

United States District Court,
S.D. Ohio,
Eastern Division.

Signed June 1, 2015.

David Devillers, Kevin W. Kelley, United States Attorney, Columbus, OH, for Plaintiff.

## *ORDER*

ALGENON L. MARBLEY, District Judge.

### I.  INTRODUCTION

This matter comes before this Court pursuant to this Court's April 29, 2015 Order requesting that the fourteen defendants who no longer are facing the death penalty submit a motion detailing why their individual cases are complex to the extent that two counsel are warranted for adequate representation.    (Doc.  571). Ten defendants submitted motions to continue representation by two counsel.[1]    In

---

1.  Robert  B.  Ledbetter  (Doc.  582),  Lance Green (Doc. 578), Allen Wright (Doc. 586), Christopher A. Harris (Doc. 583), Robert L. Wilson, III (Doc. 591), Rashad Liston (Doc.

addition, two defendants who were not previously death penalty defendants have submitted motions requesting the appointment of second counsel.[2]

## II. BACKGROUND

On June 23, 2014, the federal grand jury returned a twenty-five count Indictment charging seventeen defendants[3] with a number of violations under federal law connected to their alleged involvement in the Short North Posse, an alleged criminal organization in the Short North Area of Columbus, Ohio. (Doc. 14). The first count in the Indictment alleges the existence of a RICO conspiracy, in which the enterprise, the Short North Posse, operated through the methods of murder, attempted murder and robbery, the distribution and possession with the intent to distribute controlled substances, tampering with witnesses; extortion, robbery and retaliation against witnesses. The remaining counts included eleven counts of murder in aid in racketeering, one count of murder through the use of a firearm during and in relation to a crime of violence, four counts of murder through the use of a firearm during and in relation to a drug trafficking crime, one count of conspiracy to murder a witness; one count of use of a firearm during and in relation to a crime of violence, four counts of felon in possession of a firearm, one count of possession with intent to distribute cocaine, and one count of possession with intent to distribute heroin.

On October 20, 2014, a Superseding Indictment was returned by the grand jury adding three new defendants and thirteen counts, bringing the total to twenty defendants, one of whom is still at large, and 38 counts.[4] These thirteen new counts included one count of attempted possession with intent to distribute cocaine, five counts of use of a firearm during and in relation to a drug trafficking crime, murder in aid of racketeering, four counts of possession with the intent to distribute marijuana, one count of attempted possession with intent to distribute marijuana, and one count of witness tampering. The three new Defendants were Andre M. Brown, Johnathan Holt, and Christopher V. Wharton.

Fourteen of the defendants are charged in the RICO conspiracy count, which includes 112 overt acts allegedly committed in furtherance of the conspiracy, but the Government has reserved the right to adduce evidence of any overt act about which it has evidence, even if that overt act is not specifically identified in the indictment. The six Defendants who are not charged in the first count are all charged with at least one count of Murder in the Aid of Racketeering relating to their membership and/or association with the Short North Posse. The number of counts may continue to grow, however, as the Government uncovers new evidence related to the Short North Posse, and as it discovers instances of witness tampering and intimidation. Case in point: on April 2, 2015, the grand jury indicted Defendants Ledbetter, Harris, Liston and Ussury for murder in aid of racketeering and murder through use of a

589), Deounte Ussury (Doc. 581), Dashawn M. Smith (Doc. 588), Rastaman Wilson (Doc. 577), Clifford Robinson (Doc. 570).

**2.** Lance Reynolds (Doc. 395), and Thomas Coates (Doc. 580).

**3.** Robert B. Ledbetter, Lance Green, Allen Wright, Tysin Gordon, Christopher Harris,

Robert L. Wilson, Rashad A. Liston, Deounte Ussury, Thomas Coates, Ishmael Bowers, Joseph Hill, Freddie Johnson, Deshawn Smith, Lance Reynolds, Rastaman Wilson, Clifford Robinson, Troy Patterson.

**4.** [No footnote text provided].

firearm during and in relation to a drug trafficking crime. The Government sought joinder of that indictment with the superseding indictment in this case, and on May 26, 2015, this Court granted the Government's motion. Thus, the current number of counts in this case totals 40.

Fourteen of the Defendants were targeted originally with a potential capital prosecution. Within the months of July and August 2014, all fourteen were appointed two counsel pursuant to 18 U.S.C. § 3005. On April 17, 2015 the Government informed the Court and Defendants of its intent not to seek the death penalty for any of the defendants previously facing potential capital prosecution.

Since August 2014, the Government has provided Defendants more than 56,000 documents in discovery, which span a ten-year period. The Government has suggested it will call nearly 100 witnesses, play a surfeit of telephone calls, and introduce hundreds of documents in order to meet its burden of proof.

At a pretrial status conference on April 24, 2015, the government proposed its tentative groupings of Defendants for three trials it anticipates in this case. The Government has estimated that it will take three months to try the first proposed group, consisting of Ledbetter, Robert Wilson, Harris, Liston, Ussury, Rastaman Wilson, and Patterson. In the first proposed group, the jury would consider sixteen counts, including count one, which includes over a hundred overt acts. The Government has estimated it would take six to eight weeks to try the second proposed group, consisting of Green, Wright, Gordon, Coates, and Johnson. In the second proposed group, there would be five counts for the jury to consider, including Count One. Finally, the Government estimated it would take six to eight weeks to try the third proposed group, consisting of Bowers, Hill, Smith, Reynolds, Brown, Holt and Wharton. In the third proposed group, the jury would consider 21 counts, including count one.

## III. STANDARD

■ 18 U.S.C. § 3005 provides that

Whoever is indicted for treason or other capital crime shall be allowed to make his full defense by counsel; and the court before which the defendant is to be tried, or a judge thereof, shall promptly, upon the defendant's request, assign 2 ... counsel, of whom at least 1 shall be learned in the law applicable to capital cases, and who shall have free access to the accused at all reasonable hours....

18 U.S.C. § 3005. "The statute is silent on whether a defendant may still be entitled to the appointment of the learned counsel if the government decides that it shall not seek the imposition of the death penalty against a defendant." *U.S v. Jones*, No. CRIM.A. 07–143(JAG), 2008 WL 2967028, at *2–3 (D.N.J. July 31, 2008) (citing *U.S. v. Douglas*, 525 F.3d 225, 235 (2d Cir. 2008)). All circuits to have considered the issue, however, except for the Fourth Circuit, have held that when the government decides not to seek the death penalty, defendants no longer have a statutory right to a second court-appointed counsel who is learned in capital cases, because the matter is no longer a capital case within the meaning of § 3005. *See, e.g., United States v. Douglas*, 525 F.3d 225, 237 (2d Cir.2008) ("[W]e agree with the majority of the federal courts of appeals that once the government has formally informed the court and the defendant of its intention not to seek the death penalty, the matter is no longer a capital case within the meaning of § 3005."); *United States v. Waggoner*, 339 F.3d 915, 918 (9th Cir.2003) ("[T]he term 'capital crime' as used in § 3005 does not

encompass the underlying offense when capital punishment cannot be imposed"); *United States v. Casseus*, 282 F.3d 253, 256 (3d Cir.2002) ("[A]fter the government declared that it would not seek the death penalty, the appellants were no longer capital defendants."); *United States v. Grimes*, 142 F.3d 1342, 1347 (11th Cir. 1998); *United States v. Shepherd*, 576 F.2d 719, 729 (7th Cir.1978); *United States v. Weddell*, 567 F.2d 767, 770 (8th Cir.1977); *Cf. U.S. v. Boone*, 245 F.3d 352, 358–59 (4th Cir.2001) (holding that under § 3005, the right to the appointment of death penalty qualified learned counsel in a case where the death penalty may be imposed attaches upon indictment and that right is absolute and not distinguished, even when the government does not in fact seek the death penalty). While, the Sixth Circuit has yet to decide this matter, this Court follows the majority of circuits, and holds that once the government notifies the court and defendants that it no longer intends to seek the death penalty, defendants no longer have an absolute statutory right to two counsel under § 3005.

That being said, no circuit has held that a district court is precluded from exercising discretion in determining whether to appoint more than one attorney in a noncapital case. Further, a number of circuits have held that a district court has the discretion to decide whether to retain the learned counsel after the Government's declination to seek the death penalty. *See Douglas*, 525 F.3d at 238 ("Our conclusion that § 3005 does not entitle a defendant to a second attorney under these circumstances would not preclude a district court, in its discretion, from maintaining the dual appointment in a future case out of a concern for fairness at the trial of a criminal offense") (citations and quotations omitted); *U.S. v. Steel*, 759 F.2d 706, 710 (9th Cir.1985) (the decision to appoint more than one attorney once government declines to seek the death penalty should be left to the sound discretion of the district court, taking into consideration the circumstances of each case).

Sections 630.30.10–20 of the Guidelines for Administering the CJA and Related Statutes ("CJA Guidelines") support the holding that while defendants are not entitled to two attorneys under § 3005 once the government declares its intent not to seek the death penalty, the district court may exercise its discretion to permit the defendant to retain both counsel if "extenuating circumstances" exist in the case:

§ 630.30 Death Eligible Cases Where Death Penalty Is Not Sought

§ 630.30.10 General Considerations

If, following the appointment of counsel in a case in which a defendant was charged with an offense that may be punishable by death, it is determined that the death penalty will not be sought, the court should consider the questions of the number of counsel and the rate of compensation needed for the duration of the proceeding.

§ 630.30.20 Number of Counsel

(a) The court should, absent extenuating circumstances, make an appropriate reduction in the number of counsel.

(b) In deciding whether there are extenuating circumstances, the court should consider the following factors:

(1) the need to avoid disruption of the proceedings;

(2) whether the decision not to seek the death penalty occurred late in the litigation;

(3) whether the case is unusually complex; and

(4) any other factors that would interfere with the need to ensure effective representation of the defendant.

*See* Guidelines for the Admin. Of Criminal Justice Act, vol. VII, § A, ch. 630.30; *See also United States v. Eldridge,* No. 09–CR–329, 2014 WL 4640848, at *4 (W.D.N.Y. Sept. 16, 2014) (quoting Guide to Judiciary Policy §§ 630.30.20); *United States v. Jonas,* No. 11–CR–00366–RJA–JJM, 2013 WL 2450603, at *1–2 (W.D.N.Y. June 5, 2013) (same).

The CJA Plan for the United States District Court for the Southern District of Ohio (the "Plan") does not include a provision regarding retention of second appointed counsel after the government determines it will not seek the death penalty. Section IV(C)(1) of the Plan does provide more generally, however, that "[m]ore than one attorney may be appointed in any case determined by the Court to be complex." Similarly, § 230.53.20(a) of the CJA Guidelines "contemplates that a defendant might request the appointment of an 'additional attorney,' but suggests that such appointment is available only in 'extremely difficult case[s] ... [and] in the interest of justice.'" *United States v. Clark,* 717 F.3d 790, 809–15 (10th Cir.2013) *cert. denied,* —— U.S. ——, 134 S.Ct. 903, 187 L.Ed.2d 777 (2014) (citing 7A Guidelines for Administering the CJA and Related Statutes § 230.53.20 (2013) ("(a) In an extremely difficult case where the court finds it in the interest of justice to appoint an additional attorney, each attorney is eligible to receive the maximum compensation allowable under the CJA.")); *See also Guide to Judiciary Policy,* Appx 2 A: Model CJA Plan, p. 5. ("more than one attorney may be appointed in any case determined by the court to be extremely difficult.")

Neither § 630.30.20 of the CJA, nor Section IV(C)(1) of the Plan define what is meant by the term "unusually complex" and "complex;" further, § 230.53.20(a) of the CJA Guidelines does not define the meaning of "extremely difficult." The term "complex," as it relates to a criminal case, is defined under § 230.23.40(b) of the CJA Guidelines [5] (which states when it is appropriate to waive case compensation maximums), as well as under the Speedy Trial Act. Under, § 230.23.40(b), a case is "complex" "[i]f the legal or factual issues in a case are unusual, thus requiring the expenditure of more time, skill, and effort by the lawyer than would normally be required in an average case...." CJA Guidelines § 230.23.40(b); *See Caracappa v. United States,* No. CV11–4921, 2013 WL 3968750, at *3–4 (E.D.N.Y. July 31, 2013) (citing *United States v. Holtz,* 379 F.Supp.2d 988, 990 (C.D.Ill.2005) (quoting *United States v. Diaz,* 802 F.Supp. 304 (C.D.Cal.1992))). New York district courts, for instance, identified factors that the court should consider in assessing the complexity of a case in the context of compensation maximums: "unusual or difficult legal or factual issues, multi-count indictments, voluminous evidence, and other circumstances, such as numerous or complex defenses that require a greater than average amount of time or skill in preparing the defense." *Caracappa,* 2013 WL 3968750, at *3–4. (internal quotations omitted).

Under the Speedy Trial Act, a court should consider the following factors when determining whether to grant a continuance:

**5.** The Criminal Justice Act authorizes payments in excess of the maximum amount provided in the Act in the case of "extended or complex representation whenever the court in which the representation was rendered, or the United States magistrate judge if the representation was furnished exclusively before him, certifies that the amount of the excess payment is necessary to provide fair compensation and the payment is approved by the chief judge of the circuit." 18 U.S.C.A. § 3006A(d)(3).

Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.

18 U.S.C.A. § 3161(h)(7)(B)(ii).

## IV. ANALYSIS

This Court begins with the standard directly on point, § 630.30.20, which includes the four factors to use in order to determine whether "extenuating circumstances" exist such that a reduction in counsel is inappropriate now that defendants no longer face capital punishment.

Since "CJA matters rarely generate published decisions," *United States v. Clark*, 717 F.3d 790, 810 (10th Cir.2013) *cert. denied*, —— U.S. ——, 134 S.Ct. 903, 187 L.Ed.2d 777 (2014) (quoting *United States v. Romero-Gallardo*, 245 F.3d 1159, 1160 (10th Cir.2001)), this Court looks for guidance in other Circuits where courts have applied the standard in § 630.30.20. In *United States v. Jonas*, No. 11–CR–00366–RJA–JJM, 2013 WL 2450603, at *2 (W.D.N.Y. June 5, 2013) and *United States v. Stewart*, No. CRIM.A. 11–107, 2012 WL 5289375, at *1 (E.D.La. Oct. 23, 2012), the district courts denied defendants' requests to retain their second learned counsel under § 630.30.20. In *Jonas*, the defendant was joined in an indictment with three other defendants and faced at least two counts of discharging a firearm causing death in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii), 924(j)(1), and (2). *Id.* at *2. As only four months had passed between the indictment and the government's notice that it did not intend to seek the death penalty, the defendant acknowledged that the decision came "relatively early" in the litigation. *Id.* The *Jonas*

Court rejected defendant's argument that he should retain both counsel because the case was complex due to the substantive charge of a "federal double homicide," the trust he developed with second counsel, and his personal characteristics. *Id.* Instead, the Court found the case was not "so unusually complex that the interests of justice demand two lawyers," referencing CJA Guidelines § 230.53.20(a). *Id.* Further, it found that the defendant had a "highly capable attorney" who met the stringent qualifications for being assigned capital prosecutions, with whom the defendant also had a trusting relationship.

In *United States v. Stewart*, the Court applied § 630.30.20 and found no extenuating circumstances warranting the retention of learned counsel. 2012 WL 5289375, at *1. First, it found the proceedings would not be disrupted because the death-penalty eligible counts arose in a larger alleged drug conspiracy matter which had been continued for other reasons. *Id.* Further, the Court found both of defendants' attorneys had represented to the Court that they had "developed a strong relationship of trust with their client and are familiar with the case," and so by permitting defendants to "select which attorney will withdraw from the matter" ensured the proceedings would not be disrupted. *Id.* Second, the Court found that to the extent the reduction in counsel occurred later in the litigation, such delay was due to the presentation of mitigating evidence. *Id.* at *2. Additionally, the Court considered that the matter had been otherwise continued. *Id.* Third, the Court found that the "alleged drug conspiracy case involving one alleged murder does not present the degree of complexity that would support the need for additional counsel." *Id.* The Court reviewed other cases from the district where second counsel had been appointed—including one with five murders and numerous other of-

fenses, and one involving conspiracy to commit arson, mail fraud, interstate travel to aid racketeering, violation of the federal firearm statutes, use of fire to commit a federal felony, as well as the underlying substantive offenses in which the defendants were specifically involved—and determined that the case was not similar to them. *Id.* Finally, the Court found no other evidence supported a finding that failure to retain the second counsel would interfere with effective representation of Defendants. As dispositive, the court reiterated that both counsel had established relationships with the defendants, and numerous other defendants in the case who were not charged with capital offenses only had one appointed attorney. *Id.*

Defendants urge this Court to follow *United States v. Jones,* where the Court considered the factors under § 630.30.20, and found extenuating circumstances existed warranting the retention of the second appointed counsel. No. CRIM.A. 07–143(JAG), 2008 WL 2967028 (D.N.J. July 31, 2008). In that case, all five defendants were charged with seven counts, including "murder conspiracy, murder, assault with a dangerous weapon, and possession, use and carrying a firearm for violent crime." *Id.* at *4. A year after the indictment, the government notified defendants of its intent not to seek the death penalty. *Id.* at *1. The Court had recognized in a Complex Case Order that the "gravity and magnitude of this case render it complex." *Id.* at *4. Further, the Court recognized that a trial would involve "a very large number of witnesses and significant amounts of physical evidence and is likely to be quite lengthy." *Id.* Because of this, the Court determined defense counsel would need additional time to prepare an adequate defense and anticipated substantial pretrial motions. *Id.* Thus, the Court found extenuating circumstances existed upon application of the four factors in § 630.30.20:

First, there is a need to avoid disruption of the proceedings. Termination of the appointment of the learned counsel will increase the work for the primary counsel, which in turn will delay and disrupt the proceedings of this case. In addition, the government informed this Court and Defendants of its decision not to seek the death penalty one year after the appointment of the learned counsel,[7] which is well into this litigation. More importantly, this case is unusually complex. The complexity of this case has been recognized by both the United States Attorney for the District of New Jersey and the defense counsel, as evidenced by the Complex Case Order. Further, the charges emanating from a homicide, racketeering activity, including robbery, attempted murder and narcotics distribution all contribute to the gravity and magnitude of this case. (*Id.*) Finally, during the one year appointment, each learned counsel has established and developed a significant attorney-client relationship with each of their clients, which will facilitate effective representation, if all learned counsel are maintained. Based on the above considerations, this Court is convinced that there are extenuating circumstances in this case, which warrant the continued appointment of learned counsel on behalf of each Defendant.

*Id.*

▮ Upon review of the factors, and the rationales and holdings in *Jonas, Stewart* and *Jones,* this Court finds that for most defendants, this case is more similar to *Jones.* First, while the decision not to seek the death penalty did not occur a full year after the first indictment, as was true in *Jones,* a full ten months have passed, in which time this Court has held a number

of all-counsel status conferences, counsel have been engaged in extensive discovery exchange and review, and have begun submitting pre-trial motions. Second, as a number of defendants indicated in their briefs, considering the volume of discovery, counsel have split up their discovery responsibilities during the past ten months, and it would be disruptive to their preparation for trial and a waste of resources to require counsel to review discovery which has already been reviewed. Third, other factors that would interfere with the need to ensure effective representation include significant attorney-client relationships that have been developed which will facilitate effective representation, which is especially important because of the extensive briefing which is anticipated in this case, according to this court's briefing schedule. For example, as one defendant's counsel argues, most of the evidence to be elicited by the Government at trial will consist of testimony of cooperating co-defendant and witnesses as yet undisclosed, for which *Jencks* materials will not be made available for defense counsel's review until 90 days before the April 4, 2016 trial date; defense counsel must file motions in limine prompted by the production of *Jencks* material within 21 days after the material is filed. Such a task, on top of preparation for a minimum six-week trial, arguably exceeds the capacity of a single attorney.

Further, like in *Jones*, this Court finds that this case is "unusually complex" for the majority of defendants requesting retention of second counsel. *Jones* involved five defendants all facing the same interwoven seven counts. This case involves twenty defendants and forty counts, far exceeding *Jones*. Further, like in *Jones*, this trial will involve "a very large number of witnesses and significant amounts of physical evidence and is likely to be quite lengthy." Not every defendant, however, faces an unusual number of counts, or counts entirely interwoven with other counts. This Court must parse, therefore, the meaning of "unusually complex," and consider its application to each defendant's case. As the Jones Court acknowledged, the question whether the case is "unusually complex" is the most important factor when determining the need for two counsel.

There is no question that the sheer number of defendants and counts, and the magnitude of discovery spanning a period of ten years render this case complex from a management perspective for all defendants. This Court previously designated this case "extended or complex" for the purposes of interim billing for the non-death penalty defendant under 18 U.S.C. § 3006A(d)(3) and (e)(3). (*See* Doc. 348) (permitting interim billing for non-death penalty defendants, adopting defendants' arguments that trial is projected to last four to five months without severance, and up to three months if severance does take place, discovery is voluminous, and alleged conspiracy spans ten years). Additionally, this Court found this case to be "complex" within the meaning of the Speedy Trial Act, because the number of defendants and the nature of the prosecution made it unreasonable to expect adequate preparation for trial without the 70 day period.

■ Prior findings that this case is complex for interim billing purposes, and for Speedy Trial Act continuance purposes, however, do not demand, necessarily, a finding that this case is "unusually complex" or "extremely difficult" for the purposes of appointing second counsel. In *United States v. Kott*, the Court reasoned that "[w]hat constitutes a complex case or extended representation for purposes of compensation is not necessarily the same standard for determining whether dual

representation is warranted under the CJA in a non-capital case." No. 3:07–CR–056–JWS–JDR, 2011 WL 2357508, at *1–4 (D.Alaska June 13, 2011). Further, *Kott* determined that "trial and pretrial proceedings may very well be extended or complex for purposes of the Speedy Trial Act but the factual and legal issues in this case do not appear to be extremely complex or extremely difficult to merit a second appointed attorney to satisfy the intent of the Criminal Justice Act and the defendant's Sixth Amendment right to counsel." *Id.* at *3. Similarly, in *United States v. Clark,* the Tenth Circuit rejected defendant's "attempt to link the concept of a 'complex' case under the Speedy Trial Act to the concept of an 'extremely difficult' case contemplated by ... CJA Guidelines § 230.53.20" because "The CJA Guidelines and the Speedy Trial Act serve wholly different purposes:" the CJA to ensure right to adequate counsel, and the Speedy Trial Act to ensure a right to a speedy trial. 717 F.3d 790, 814 (10th Cir. 2013) *cert. denied,* —— U.S. ——, 134 S.Ct. 903, 187 L.Ed.2d 777 (2014).

The Court in *Clark* did find, however, that decisions addressing whether to permit CJA funding for "investigative, expert, and other services necessary for adequate representation," under 18 U.S.C. 3006A(a)(1) were instructive to the district court's inquiry concerning requests to add counsel. This is because in both instances the court must consider whether, within the purpose of the CJA, the defendant was receiving counsel and other services necessary for "constitutionally adequate representation." *Id.* at 811–12 (citing *United States v. Solon,* 596 F.3d 1206, 1209–10 (10th Cir.2010) (defendant "must convince the court that the [additional] services are 'necessary to an adequate defense' ")). Similarly, the *Jones* Court determined that a complex case order regarding billing was evidence of a case's complexity for pur-

poses of retaining capital counsel under § 630.30.20 of the CJA Guidelines. 2008 WL 2967028, at *4.

After careful consideration, it is clear that while this Court's prior holdings that this case is complex under the Speedy Trial Act and for Interim Billing provide some support for finding this case "unusually complex" or "extremely difficult", such orders are not dispositive. In those orders, this Court noted the volume of discovery, the number of total defendants, and the anticipated length of trial. Such factors are important from a case management perspective, and while considering the necessary length of time for adequate preparation, but are not necessarily indicative of the rare necessity for two attorneys.

Of further consideration are slight differences in the standards this Court should consider: § 630.30.20 modifies the term complex with the adjective "unusually," the Southern District Plan permits the appointment of second counsel simply upon the finding that the case is "complex," and § 230.53.20(a) of the CJA Guidelines permits appointment of second counsel when the case is "extremely difficult". This Court finds that while the standard under § 630.30.20 of the CJA Guidelines is directly on point, as it deals with the determination of whether to retain second counsel once the government decides not to pursue a capital sentence, the determination facing the Court under § 630.30.20, the Southern District Plan, or § 230.53.20 is essentially the same: whether Defendants are receiving constitutionally adequate representation under the Sixth Amendment without a second counsel. Each factor under § 630.30.20 aims to answer that question; whether the defendant's individual case is "unusually complex" is the most dispositive in this case, however. The clearest indicators of

whether the case is unusually complex are the number and nature of counts facing each defendant.

Thus, this Court holds that the following Defendants would not receive constitutionally adequate representation without retention of second counsel, or without appointment of second counsel, due to the number and nature of the counts they face: Robert B. Ledbetter (Doc. 582)[6], Lance Green (Doc. 578)[7], Allen Wright (Doc. 586)[8], Christopher A. Harris (Doc. 583)[9], Robert L. Wilson, III (Doc. 591)[10], Rashad Liston (Doc. 589)[11], Deounte Ussury (Doc. 581)[12], Dashawn M. Smith (Doc. 588)[13],

6. Count 1—Racketeering Conspiracy, Count 4—Murder in Aid of Racketeering (Johnson), Count 9—Murder in Aid of Racketeering (Williams), Count 10—Murder through the Use of a Firearm During and in Relation to a Crime of Violence (Williams), Count 29—Murder in Aid of Racketeering (Fyffe), Count 30—Conspiracy to Commit Murder (Fyffe), Count 31—Use of a Firearm during and in relation to a crime of violence (Oct. 19, 2011) in relation to witness tampering, Anticipated Count 39—Violent Crimes in Aid of Racketeering Activity (Brumfield), Anticipated Count 40—Murder through the Use of a Firearm During and in Relation to a Drug Trafficking Crime (Brumfield).

7. Count 1—Racketeering Conspiracy, Count 2—Murder in Aid of Racketeering (Hester), Count 3—Murder in Aid of Racketeering (Teague).

8. Count 1—Racketeering Conspiracy, Count 2—Murder in Aid of Racketeering (Hester), Count 3—Murder in Aid of Racketeering (Teague).

9. Count 1—Racketeering Conspiracy, Count 5—Murder in Aid of Racketeering (Moon), Count 6—Murder through the Use of a Firearm During and in Relation to a Crime of Violence (Moon), Count 7—Murder in Aid of Racketeering (Peters), Count 8—Murder through the Use of a Firearm During and in Relation to a Crime of Violence (Peters), Count 9—Murder in Aid of Racketeering (Williams), Count 10—Murder through the Use of a Firearm During and in Relation to a Crime of Violence (Williams), Anticipated Count 39—Violent Crimes in Aid of Racketeering Activity (Brumfield), Anticipated Count 40—Murder through the Use of a Firearm During and in Relation to a Drug Trafficking Crime (Brumfield).

10. Count 1—Racketeering Conspiracy, Count 5—Murder in Aid of Racketeering (Moon), Count 6—Murder through the Use of a Firearm During and in Relation to a Crime of Violence (Moon), Count 9—Murder in Aid of Racketeering (Williams), Count 10—Murder through the Use of a Firearm During and in Relation to a Crime of Violence (Williams), Count 15—Murder in Aid of Racketeering (Davis), Count 16—Murder through the Use of a Firearm During and in Relation to a Crime of Violence (Davis).

11. Count 1—Racketeering Conspiracy, Count 9—Murder in Aid of Racketeering (Williams), Count 10—Murder through the Use of a Firearm During and in Relation to a Crime of Violence (Williams), Count 15—Murder in Aid of Racketeering (Davis), Count 16—Murder through the Use of a Firearm During and in Relation to a Crime of Violence (Davis), Anticipated Count 39—Violent Crimes in Aid of Racketeering Activity (Brumfield), Anticipated Count 40—Murder through the Use of a Firearm During and in Relation to a Drug Trafficking Crime (Brumfield).

12. Count 1—Racketeering Conspiracy, Count 7—Murder in Aid of Racketeering (Peters), Count 8—Murder through the Use of a Firearm During and in Relation to a Crime of Violence (Peters), Count 11—Murder in Aid of Racketeering (Hill), Anticipated Count 39—Violent Crimes in Aid of Racketeering Activity (Brumfield), Anticipated Count 40—Murder through the Use of a Firearm During and in Relation to a Drug Trafficking Crime (Brumfield).

13. Count 1—Racketeering Conspiracy, Count 13—Murder in Aid of Racketeering (McCuen), Count 14—Murder through the Use of a Firearm During and in Relation to a Crime of Violence (McCuen), Count 36—Felon in Possession of a Firearm (May 20, 2014), Count 37—Possession with Intent to Distribute Heroin (May 20, 2014).

and Lance Reynolds (Doc. 395)[14]. All of the preceding defendants, but two, face five or more counts, one of which is the conspiracy count. Two defendants, Green and Wright, face only three counts; both of these defendants, however, face charges for two separate murders. Thus, considering the complexity of the conspiracy count, and the fact that these two defendants must defend against accusations as to two factually distinct allegations for murder, two counsel are necessary under the CJA standard of "unusually complex" and "extremely difficult."

■ Rastaman Wilson (Doc. 577), and Clifford Robinson (Doc. 570), both face the same two counts: Count 5–Murder in Aid of Racketeering, and Count 6–Murder through the Use of a Firearm During and in Relation to a Crime of Violence. Both Counts relate to the alleged murder of Mr. Moon. This Court finds that although this allegation arises in the context of an overall unusually complex case, Wilson's and Robinson's individual cases are not so unusually complex or extraordinarily difficult as to warrant the retention of two learned counsel. In terms of the charges Wilson and Robinson face, this case is more similar to *Jonas*, in which the Defendant faced charges for a federal double homicide, and the district court concluded that such a case was not so unusually complex that the interests of justice demanded two attor-

neys. The charges that Wilson and Robinson face are, arguably, less complex than the charges the Defendant in *Jonas* faced, because Wilson and Robinson's charges stem from a single alleged murder. Wilson and Robinson are not faced with the conspiracy Count, and so the discovery pertaining to them is less voluminous. Further, this Court concludes, like the court in *Jonas*, that Wilson's and Robinson's lead attorneys are highly capable, they both met the stringent qualifications for being assigned to capital prosecutions, and they both state they have a trusting relationship with their clients. Thus, Wilson and Robinson will receive constitutionally adequate representation in this case with only one counsel.

■ Finally, Mr. Coates, a defendant who never faced capital prosecution, is charged only in the first count for Racketeering Conspiracy. While that single count is more complex than most single counts in most cases, it is not so extremely difficult on its own to rise to the unusual circumstances that warrant appointment of second counsel. As with counsel for Wilson and Robinson, this Court finds Coates' counsel to be highly capable.

This Court notes that court-appointed counsel for Mr. Coates, Wilson or Robinson can move this Court to hire an expert, investigator or paralegal pursuant to the CJA to assist in the preparation of de-

---

14. Count 1—Racketeering Conspiracy, Count 13—Murder in Aid of Racketeering (McCuen), Count 14—Murder through the Use of a Firearm During and in Relation to a Crime of Violence (McCuen), 17—Attempted Possession with Intent to Distribute, Nov. 6, 2009, Count 18—Use of Firearm During and in Relation to a Drug Trafficking Crime (Nov. 6, 2009), Count 19—Murder in Aid of Racketeering (Battle), Count 20—Murder through the Use of a Firearm During and in Relation to a Crime of Violence (Battle), Count 21—Possession with Intent to Distribute Marijuana (Jan. 20, 2011), Count 22—Attempted Possession with Intent to Distribute Marijuana (Aug. 11, 2011), Count 23—Use of Firearm during and in relation to a drug trafficking crime (Aug. 11, 2011), Count 24—Possession with Intent to Distribute Marijuana (Sept. 5, 2011), Count 25—Possession with Intent to Distribute Marijuana (Oct. 29, 2011), Count 26—Use of Firearm During and in Relation to a Drug Trafficking Crime (Oct. 29, 2011), Count 27—Possession with Intent to Distribute Marijuana (March 17, 2012), Count 28—Use of Firearm During and in Relation to a Drug Trafficking rime (March 17, 2012), Count 38—Witness Tampering (July 15, 2014).

fense, considering the unusual volume of discovery. Once again, however, their cases are not unusually complex or unusually difficult from a legal perspective to merit appointment of second counsel. *See Kott*, 2011 WL 2357508, at *3 (finding that the defendant's case was not so extremely difficult as to merit second counsel, but suggesting that Defendant's counsel move the court to hire an expert, investigator, or paralegal pursuant to the CJA to assist in the preparation of defense if so required).

## V. CONCLUSION

Thus, the motions of the following defendants are hereby **GRANTED**: Robert B. Ledbetter (Doc. 582), Lance Green (Doc. 578), Allen Wright (Doc. 586), Christopher A. Harris (Doc. 583), Robert L. Wilson, III (Doc. 591), Rashad Liston (Doc. 589), Deounte Ussury (Doc. 581), Dashawn M. Smith (Doc. 588), and Lance Reynolds (Doc. 395).

The motions of the following defendants are hereby **DENIED**: Rastaman Wilson (Doc. 577), Clifford Robinson (Doc. 570), and Thomas Coates (Doc. 580).

**IT IS SO ORDERED.**